NORTHEAST GENERATION COMPANY *v.* WILLIAM MARCELLO ET AL.
(AC 25692)

Lavery, C. J., and Gruendel and Peters, Js.

Argued October 27—officially released December 27, 2005

*Neil R. Marcus*, with whom, on the brief, was *Barbara M. Schellenberg*, for the appellants (defendants).

*Richard L. Street*, with whom, on the brief, was *Russell A. Green*, for the appellee (plaintiff).

*Opinion*

PETERS, J. This case concerns the propriety of placing an unauthorized dock on a lake that an electricity generating company uses as a storage reservoir for the production of electric power. The issue is whether General Statutes § 16-237 precludes the unauthorized user

from invoking the law of adverse possession to justify continued use of the dock. The statute provides in relevant part that "[n]o length of possession, user or occupancy of any buildings or land . . . adverse to any . . . right thereto belonging to . . . [an] electric light or power corporation, and used or acquired for use for its corporate purposes, shall create or continue any right in or to such land . . . ." Procedurally, the issue arises in the context of a denial of a motion to open a default judgment granting injunctive relief to the electricity generating company. We affirm the judgment of the trial court.

On November 13, 2003, the plaintiff, Northeast Generation Company, filed an action for trespass against three defendants. The defendant William Marcello owned real property at 31 Hayestown Road in Danbury, where he and the defendant Lauren Marcello operated the defendant Lakeside Cafe, LLC. The plaintiff alleged that it is the fee owner of the bed and shore of Candlewood Lake and that the defendants, without permission to do so, had constructed and maintained a catwalk, a dock, boat slips and a fence on the lake.[1] Alleging that it had no remedy at law to stop this continuing trespass, the plaintiff asked for a temporary and a permanent injunction as well as monetary damages.

On December 8, 2003, the trial court held an evidentiary hearing on the plaintiff's application for a temporary injunction. The court continued this hearing to January 5, 2004, to enable William Marcello to present the testimony of a title searcher who would document the defendants' claim that they had a fee interest in the dock and its appurtenant structures.[2] Because William

---

[1] The defendants use the dock and its appurtenances to enable customers of the defendant cafe to park their boats at one of the landing strips and then to walk across Hayestown Road to the cafe.

[2] Acting pro se, the defendant William Marcello told the court: "I do have a lawyer that is title searching it back to when the lake was flooded back in 1929. So, I'm not aware of what was there in the deed and how much property was held. So, I want that in the record that . . . I talked to him

Marcello failed to appear on January 5, the court rendered a default judgment and permanently enjoined the defendants from constructing or maintaining the dock and its appurtenances.

On January 8, 2004, now represented by counsel, the defendants filed their first motion to open the judgment. They alleged that William Marcello had appeared in court on that day, rather than on January 5, because inadvertently he had written down the wrong date for the continuation of the December hearing.

At a new hearing on May 10, 2004, the defendants abandoned their prior claim of a fee interest in the dock, but asked for an opportunity to pursue a claim of adverse possession against the plaintiff. The trial court denied their motion to open without prejudice, pending briefing by both parties of the defendants' new claim.

On June 30, 2004, the defendants filed their second motion to open the judgment, this time on the ground of adverse possession. After a hearing held on July 19, 2004, the court denied the defendants' motion on September 24, 2004. It found that the property on which the dock was situated belonged to the plaintiff as a successor in interest to the Connecticut Light & Power Company. It concluded that the defendants' claim for adverse possession was barred by § 16-237, either directly or because of the ownership of the lake by the Connecticut Light & Power Company until 2000. Accordingly, the court's prior orders, including the injunction, remained in force.[3]

---

today. He didn't have . . . he needs my plot plan. So, I'm bringing it down to his office right after this court."

[3] The judgment of the court permanently enjoined the defendants "from placing, constructing or maintaining a dock, slips, catwalk or fence, or otherwise trespassing, on [the plaintiff's] property in Danbury, CT. On or before February 15, 2004, the defendants shall remove, at their own expense, the catwalk, slips, dock and fence that they have constructed and maintain[ed] on [the plaintiff's] property adjacent to Hayestown Road that lies

The defendants appeal from the denial of their second motion to open the judgment against them. They maintain that, as a matter of law, the trial court misread the law of adverse possession as it applies to Candlewood Lake. We are not persuaded.

The court made the following undisputed findings of fact. "Lake Candlewood is truly unique. It was one of the original, if not the original, mass water power generating electrical sources which utilized the confined water by raising and lowering that water level to generate and maintain the electricity which was produced by that process.

"In the process of creating that lake, I believe in 1929 or 1930, the utility went about the process of acquiring all this land. It was a very interesting process when one sees the results. What the utility has accomplished is the reservation of the right to flood the lake bed up to 440 foot elevation contour line. That is 440 feet above sea level. It is not an imaginary line, but is clearly demonstrable as by survey.

"When the utility purchased the land from many of the old farmers, some . . . were either more intelligent or more cunning than some of their neighbors who sold their property to Connecticut Light and Power Company to the 440 elevation contour line. It stopped right there. The others, who were a little bit more perceptive, sold their land, but they also reserved the right to use the waters of Lake Candlewood for recreational purposes, as essentially set forth in those deeds.

"Those who reserved the rights to access the water are faced with no problem at all, across the land that may lie unflooded below the 440 elevation contour line. That is so whether or not flooded at any particular time.

between Danbury Town Park and the Danbury Yacht Club in Danbury, CT. The defendants shall pay damages to the plaintiff in the sum of $2500."

Those who sold to the 440 elevation contour line use the waters by virtue of leases negotiated for short terms with the utility or its subsidiary for negligible amounts.

"In this case, the title search did not disclose that the [defendants'] predecessor reserved the right to use the waters of Lake Candlewood so as to solve this problem. It merely went to the 440 elevation contour line. Theoretically, [they have] no rights below that, except [those] which might be granted by a license."

The court then observed that "the Connecticut Light and Power Company is a public utility and historically and contemporaneously, there is a strong preclusion of anyone being able to assert adverse possessory rights against a public utility. . . . The question may arise, if the court does not accept the plaintiff's position that [the plaintiff] is a utility and, if indeed, there are such adverse possessory rights that do run against [the plaintiff] that the period of acquisition of those rights does not satisfy the fifteen (15) year requirement. One may talk about 'tacking,' but one cannot tack on rights against an entity shielded by immunity. It can only begin with the time that the utility is no longer a utility or a derivation of it." It is undisputed that the plaintiff purchased the reservoir from Connecticut Light and Power Company in March, 2000.[4]

In their appeal, the defendants maintain that the trial court misconstrued § 16-237. Without disputing the court's findings of fact, they argue that the statute is

___

[4] The plaintiff is a company that owns three hydroelectric properties that are used for the generation of electricity. A sister company, Northeast Generation Services Company, provides management services for the generation of hydroelectric power. Pursuant to Public Acts 1998, No. 98-28, § 5, codified as General Statutes § 16-244e, Connecticut electric power companies were required to unbundle and separate their generation assets from their transmission assets. Connecticut Light and Power Company, having divested itself of its generation assets, continues to operate its transmission business.

inapplicable because (1) the lake does not fall within the statutory phrase "buildings or land" and (2) the defendants' dock does not interfere with the plaintiff's present ability to perform its corporate function of generating electricity or with the ability of Connecticut Light and Power Company, before 2000, to have done the same.

These issues were raised at trial in the context of a motion to open a judgment. "In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) *Pavone* v. *West*, 82 Conn. App. 623, 626, 846 A.2d 884 (2004). According to the defendants, the court's decision was unreasonable because it was based on a misconstruction of § 16-237.[5]

The defendants' first argument focuses on the second sentence of the statute, which provides in relevant part: "No length of possession, user or occupancy of any *buildings or land* . . . adverse to any . . . right thereto belonging to . . . [an] electric light or power corporation . . . shall create or continue any right in or to such land . . . ." (Emphasis added.) General Statutes § 16-237. In their view, because the waters of the lake are not "buildings or land," the statute does not preclude a claim of adverse possession based on the construction and maintenance of a dock.

This claim founders for lack of a factual predicate. As the plaintiff points out, although the defendants' dock may indeed float on the waters of the lake, the dock is attached to land that the plaintiff owns.[6]

---

[5] At trial, the defendants also argued that they should have an opportunity to make an evidentiary presentation in support of their claim of adverse possession, but they have not briefed this claim on appeal. Accordingly, we deem this claim abandoned. See, e.g., *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 49 n.7, 881 A.2d 194 (2005).

[6] Robert E. Head, land administer for Northeast Generation Services Company, which manages the lake and surrounding property owned by the plaintiff, so testified at trial. The defendants produced no contrary evidence.

Throughout these proceedings, the plaintiff has sought removal not only of the dock itself, but also of a catwalk, boat slips and a fence. The defendants have consistently claimed a right to maintain all of these structures. Even more telling, the defendants have not challenged the plaintiff's assertion that the place where the dock is attached to the land is below the 440 foot elevation contour line that demarks the plaintiff's property line.

The defendants' second argument is that § 16-237 does not bar their claim of adverse possession because the defendants' use of the dock does not interfere with the plaintiff's use of the lake "for its corporate purpose." In their view, the plaintiff has no right to injunctive relief without a factual showing that the defendants' dock impairs the plaintiff's ability to generate electricity.

Significantly, the defendants do not question the plaintiff's status as a power company. They acknowledge that the plaintiff presently uses the lake to generate electricity in the same manner that it was used by Connecticut Light and Power Company until 2000. The defendants point instead to testimony by Robert E. Head, land management administrator for Northeast Generation Services Company, a company that provided management services to the plaintiff. Head stated the reasons why the plaintiff would not give the defendants a license to maintain their dock. Concededly, other docks have been licensed elsewhere around the lake. Head testified that such a license would not have been issued to the defendants had they applied because the defendants' property did not abut the lake, the defendant's dock was situated in a very narrow cove and usage of the lake's recreational capacity was at about 98 percent.

---

In their reply brief, they do not challenge the accuracy of the plaintiff's description of the location of the dock.

In light of this testimony, the defendants argue that § 16-237 does not bar their claim of adverse possession. We are not persuaded.

First, to the extent that the defendants rely on the proposition that it would have been unreasonable to deny them a license for their dock, they have undermined their claim of a possessory right without a license. "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his own and without the consent of the owner." (Internal quotation marks omitted.) *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 842, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002). A right to a license is not a claim of right to use property without the consent of the owner.

Second, the fact that the plaintiff has consented to the use of the lake for recreational purposes is not inconsistent with the fact that the plaintiff continues to use the lake for the corporate purpose of generating electricity, as the trial court found. The law concerning municipal immunity from adverse possession provides a helpful analogy.

"It is well established that [t]itle to realty held in fee by a state or any of its subdivisions for a public use cannot be acquired by adverse possession. . . . A public entity may claim immunity from adverse possession, however, only to the extent that the property against which a claim has been asserted is held for public use." (Citations omitted; internal quotation marks omitted.) *American Trading Real Estate Properties, Inc.* v. *Trumbull*, 215 Conn. 68, 77, 574 A.2d 796 (1990). "[L]and is . . . held for public use even when a municipality is not presently making use of the land but is simply

holding it for development at some later time. Absent some evidence of municipal intention to abandon its plans for future development of the municipal property, the land is immune from claims of adverse possession." Id., 79–80.

There is no reason to believe that, in enacting § 16-237 to confer statutory immunity from adverse possession on public utilities, the legislature intended to enact a rule less protective of the property rights of regulated industries than that applicable to municipalities. Until the plaintiff abandons use of the lake for the generation of electricity, permissive use of the lake for recreational purposes does not subject the plaintiff to claims of adverse possession.

The judgment is affirmed.

In this opinion the other judges concurred.