## ROBERT J. CAMPANELLI ET AL. *v.* CANDLEWOOD HILLS TAX DISTRICT
## (AC 32523)

DiPentima, C. J., and Bear and Flynn, Js.

Argued October 13, 2010—officially released January 18, 2011

*Doris B. D'Ambrosio,* for the appellants (plaintiffs).

*Joseph L. Gegeny,* for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiffs, Robert J. Campanelli and Linda DiSarro, appeal from the judgment of the trial court rendered in favor of the defendant, the Candlewood Hills Tax District (district). The plaintiffs allege that they acquired title by adverse possession to a portion of undeveloped property owned by the district located adjacent to their property. The trial court found that the plaintiffs had failed to rebut the presumption that the district, a quasi-municipal corporation, held its property for public use and, therefore, was immune from a claim of adverse possession. We affirm the judgment of the trial court.

The trial court found the following facts. The property at issue is located at 20 Brook Drive, New Fairfield, and is owned by the district. The property is partially wooded, undeveloped land, part of which contains wetlands. Testimony and other evidence at trial demonstrated that, from 1988 until 2007, the district used its property for a variety of purposes. During the winter season, the property was used for the disposal of excess plowed roadway snow, and, during the fall season, it was used for the disposal of leaves and debris that

would accumulate in the catch basins on or near the residents' property. The residents often were permitted to dispose of household garbage and debris in a dumpster located on the property.

On October 15, 2004, however, the town of New Fairfield instructed the district to cease and to desist from using the property as a waste disposal site because it is located in a designated wetlands area. Thereafter, the district installed "no trespassing" signage and a locked gate to deter private users and, to the extent possible, to ensure entry only by those who were authorized by the district.

In late 2006, the district's board of directors considered a proposal to build a clubhouse on the property that "could be used for community functions, rented out for private parties and as a playground for kids." Deep soil test tests were performed by an engineering company to determine if the property would be an appropriate location for a septic system. The proposal subsequently was defeated by a vote of the district.

The plaintiffs have resided at 18 Brook Drive since November, 1983, and have been the record titleholders of 18 Brook Drive since September, 1988. At trial, testimony and other evidence demonstrated that the plaintiffs had engaged in a number of activities for their own purposes on a portion of 20 Brook Drive that abuts their own property. Campanelli maintained this portion of the district's property by clearing high bushes, removing weeds and cutting the grass. He also stored a large pile of wood and parked his trailer on this portion of the property. Campanelli also purchased and distributed fill to level the surface on this portion of the property.

Following receipt of the October, 2004 notice from the town of New Fairfield, the district advised Campanelli in writing to remove his woodpile from the district's property. A subcontractor, who was in the

process of removing the dumpster on the district's property, knocked down the fence at the entrance to the property. Campanelli took it upon himself to install a new post and chain at the entrance. The district's manager then cut the lock placed there by Campanelli. In a letter dated December 27, 2004, Campanelli informed the district's tax collector, business manager and board that he was deducting from his tax bill the cost of supplies and labor for installing the post and chain. In that same letter, Campanelli informed the district that he was entitled to use the property as he had done for more than twenty years. He also claimed to have protected the property "from illegal dumping on a wetlands site" and advised the district about the need for tree, drain and road maintenance. In a February 11, 2005 response to Campanelli's letter, the tax collector and business manager for the board rejected the payment and credit claim, returned Campanelli's check and issued a new statement to the plaintiffs charging the full assessment with interest for late payment.

On April 10, 2007, the district installed a chain-link fence along the property line that separates 18 Brook Drive and 20 Brook Drive. The district also hired a contractor to move Campanelli's woodpile onto his property at 18 Brook Drive. The plaintiffs commenced this action on or about April 19, 2007.

Following a trial on January 9, 2009, the court, *Sommer, J.*, concluded that the plaintiffs had failed to satisfy their burden of rebutting the presumption that the district held the relevant property for public use and consequently was immune from a claim of adverse possession. This appeal followed.

Both the plaintiffs and the defendant agree that the applicable standard of review is the clearly erroneous

standard.[1] "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Gordon* v. *Tobias*, 262 Conn. 844, 849, 817 A.2d 683 (2003).

The issue before this court is whether the trial court properly determined that the disputed property could not be taken by adverse possession because it was held for public use by a tax district.

A legally created tax district is a quasi-municipal corporation. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 547, 427 A.2d 822 (1980);

[1] "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his [or her] own and without the consent of the owner. . . . A finding of [a]dverse possession is not to be made out by inference, but by clear and positive proof. . . . [C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . The burden of proof is on the party claiming adverse possession. . . .

"Despite [this] exacting standard, our scope of review is limited. . . . Because adverse possession is a question of fact for the trier . . . the court's findings as to this claim are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A trial court's findings in an adverse possession case, if supported by sufficient evidence, are binding on a reviewing court . . . ." (Internal quotation marks omitted.) *Shepard Group, LLC* v. *Arnold*, 124 Conn. App. 41, 44–45, 3 A.3d 975 (2010).

*Larkin* v. *Bontatibus*, 145 Conn. 570, 576, 145 A.2d 133 (1958). "Quasi-municipal corporations are governed by the law applicable to municipal corporations." *Stroiney* v. *Crescent Lake Tax District*, 205 Conn. 290, 294, 533 A.2d 208 (1987).

"Title to realty held in fee by a state or any of its subdivisions for a public use cannot be acquired by adverse possession." *Goldman* v. *Quadrato*, 142 Conn. 398, 402–403, 114 A.2d 687 (1955). "In light of the myriad of public uses that may be advanced through public ownership of undeveloped lands . . . property that is held in fee simple ownership by municipalities must be presumed to be held for public use. It follows that the party seeking title by adverse possession must bear the burden of rebutting that presumption. Municipal immunity from adverse possession is the rule and not the exception, and we have consistently held that the party seeking to acquire title by adverse possession bears the burden of proving all the elements of adverse possession." *American Trading Real Estate Properties, Inc.* v. *Trumbull*, 215 Conn. 68, 80, 574 A.2d 796 (1990).[2] Public rights to municipal property will not be forfeited by lack of use absent some additional evidence indicating that the municipality intended to abandon the property. *Appeal of Phillips*, 113 Conn. 40, 45, 154 A. 238 (1931). "[T]he public use requirement can be satisfied even if a property is not presently subject to public use so long as it is held with an intention to develop it at some time in the future." *American Trading Real Estate Properties, Inc.* v. *Trumbull*, supra, 79.

---

[2] Where title to real property is claimed by adverse possession, the standard is clear and positive proof. *Roche* v. *Fairfield*, 186 Conn. 490, 498, 442 A.2d 911 (1982). In *Clark* v. *Drska*, 1 Conn. App. 481, 487, 473 A.2d 325 (1984), we concluded that "clear and positive proof" is the same as "clear and convincing evidence." See *Gemmell* v. *Lee*, 59 Conn. App. 572, 578, 757 A.2d 1171 (adverse possession must be proved by clear and convincing evidence), cert. denied, 254 Conn. 951, 762 A.2d 901 (2000); see also footnote 1 of this opinion.

The plaintiffs' burden, therefore, was to rebut the presumption that the property was being held for public use. See id., 79–80; *Cornfield Point Assn.* v. *Old Saybrook*, 91 Conn. App. 539, 563, 882 A.2d 117 (2005). We agree with the court that the plaintiffs failed to meet this burden.

The trial court expressly found that there was no evidence that the district intended to abandon the property. Whether the district continued to hold the property for public use without abandoning it presents a question of fact and, accordingly, the trial court's finding will not be disturbed unless it is clearly erroneous. Id., 564. Over the years, the district used the property for a variety of community based activities, including disposal of leaves and plowed roadway snow. The district also permitted property owners in the district to dispose of household garbage and debris on the property. The district's board later considered a proposal to build a community center on the land. The proposal was considered only months before the filing of this action, and the fact that the proposal was defeated does not definitively indicate that there is no intention to pursue possible development at the property in the future. These actual and proposed uses of the property over many years clearly support the trial court's finding that the property was not abandoned by the district.

The plaintiffs, however, argue that in order for a use to be "public," it must be open to the general public. The plaintiffs assert that an essential feature of property dedicated to public use is that it is not confined to " 'privileged individuals . . . .' " The plaintiffs, in effect, are asking this court to require of all municipal property the level of public access associated with state owned or municipally owned public parks and beaches in order to be eligible for immunity from adverse possession. See *Leydon* v. *Greenwich*, 257 Conn. 318, 777 A.2d 552 (2001); *Laurel Beach Assn.* v. *Milford*, 148 Conn.

233, 169 A.2d 748 (1961). The plaintiffs have advanced no viable reason or basis to adopt such a rule for all property owned by a municipality or quasi-municipal corporation. We, therefore, reject the plaintiffs' argument that the district's property must be open to the public at large in order to qualify for immunity from claims of adverse possession.

The plaintiffs also argue that the fact that "no trespassing" signs later were installed on the property defeats the district's claim of immunity because the general public did not have access to the property. Public use, however, "includes a myriad of uses, many of which do not involve a physical intrusion on the land." *Cornfield Point Assn.* v. *Old Saybrook*, supra, 91 Conn. App. 563. For example, municipal water systems have a definite public purpose, but municipalities are permitted to regulate access to their reservoirs. See *Sachem's Head Property Owners' Assn.* v. *Guilford*, 112 Conn. 515, 518, 152 A. 877 (1931) ("[i]t is not open to question that a municipal water system, provided under and pursuant to legislative authority, which furnishes water for fire protection and other municipal purposes and to individual inhabitants of the municipality for compensation, is used for a public purpose"); see also General Statutes § 25-45 ("[t]he legislative body of any city or borough may make, alter and repeal ordinances to regulate or prevent fishing, trespassing or any nuisance in or upon any property of such city or borough or of any subdivision thereof").

The state has conferred a similar right of immunity from claims of adverse possession against public utilities. See General Statutes § 16-237;[3] *Northeast Generation Co.* v. *Marcello*, 92 Conn. App. 753, 762, 887 A.2d

---

[3] General Statutes § 16-237 provides in relevant part: "No length of possession, user or occupancy of any buildings or land, or adverse to any easement therein or right thereto belonging to a telegraph, telephone or electric light or power corporation, and used or acquired for use for its corporate purposes, shall create or continue any right in or to such land, or adverse to any such easement."

384 (2005). Public utilities, by way of analogy, perform a clear public use, even if the general public does not have physical access to their property.

In *American Trading Real Estate Properties, Inc.*, for example, our Supreme Court stated that "[a] municipality might, for example, elect to buffer a park from encroaching development by maintaining undeveloped property adjacent to the park. Similarly, a municipality might attempt to preserve the character of the community by acquiring 'open space' land or 'greenbelts' or might seek to protect wildlife or inland wetlands by purchasing land to be left in an undisturbed state. A standard of public use that fails to include such uses would do a great disservice to these commendable efforts to protect the environment." *American Trading Real Estate Properties, Inc.* v. *Trumbull*, supra, 215 Conn. 80. "[T]he rationale underlying the immunity of municipalities from adverse possession, that the public should not lose its rights to property as a result of the inattention of a governmental entity . . . applies with even greater force to situations involving undeveloped lands, which may, by their nature, garner even less attention from local governments suffering from the constraints of scarce fiscal resources." (Citation omitted.) Id., 80–81.

The property at issue here has been utilized by the district for a number of different community purposes. Additionally, when the district learned that the property was subject to environmental restrictions under the town inland wetlands and watercourses regulations, it acted to protect the property from refuse disposal and other improper activities in compliance with town requirements. It continued to explore additional appropriate use of the property, but currently the property remains undeveloped and access to the property is limited. However, in light of the myriad of "public uses" that do not involve general public access to state or

municipal property, we reject the plaintiffs' argument that the general public must have access to the property in order for it to qualify for immunity from adverse possession.

For these reasons, we agree with the trial court that the plaintiffs presented insufficient evidence to rebut the presumption that the defendant holds 20 Brook Drive for public use.[4] Accordingly, we hold that the court's conclusion that the defendant is immune from the plaintiffs' claim of adverse possession was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[4] See, e.g., *American Trading Real Estate Properties, Inc.* v. *Trumbull*, supra, 215 Conn. 81–82 ("[s]ince the plaintiff has presented no evidence indicating that the defendant holds the property for some nonpublic use or has abandoned its intention to hold the roadway for public purposes, we conclude that the plaintiff has failed to rebut the presumption that the defendant holds the roadway for public use").