******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEPHEN D. BENJAMIN ET AL.
*v.* CITY OF NORWALK ET AL.
(AC 37876)

Lavine, Mullins and Harper, Js.

*Argued September 20—officially released December 27, 2016*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Lee, J.)

*Simon Sumberg*, for the appellants (plaintiffs).

*Urban S. Mulvehill*, self-represented, the appellee (defendant).

*Opinion*

LAVINE, J. The plaintiffs, Stephen D. Benjamin and Helen Z. Benjamin, appeal from the judgment of the trial court denying their claim of adverse possession of 708 square feet of land adjacent to their home in Norwalk (contested area). On appeal, the plaintiffs claim that the court erred by (1) finding that The Shorefront Park Company dedicated all of the roads shown on a subdivision map for the use of the defendant city of Norwalk (city), (2) determining that it was their burden to rebut municipal acceptance of dedicated roadways by clear and convincing evidence, and (3) finding that dominion over the contested area was shared. We affirm the judgment of the trial court.

The plaintiffs commenced the present action against the city, The Shorefront Park Improvement Association, Inc., and several individual defendants[1] on December 17, 2009. The plaintiffs sought a judgment vesting title to the contested area in them, claiming that they had established possession of the area to the exclusion of all others and had acquired title to the contested area by adverse possession. The case was tried to the court over three days in October, 2014. The court made the following findings of fact in its April 14, 2015 memorandum of decision.

The plaintiffs acquired title to their home at 40 Quintard Avenue (property) from the estate of Mary Ann Cocchia on June 18, 1992. The property is located in the Shorefront Park subdivision within the city. The Cocchia family had owned the property, which is located just inside the subdivision's western boundary, since June 17, 1959. Between the property and Quintard Avenue, a city street, runs a road called either "Shorefront Park"[2] or "Private Way." The point where that road meets Quintard Avenue is marked by two stone pillars, which are approximately sixteen feet apart. A curb cut runs between the pillars, and a sign bearing the words "Shorefront Park" is posted on one of the pillars. A wider opening to the subdivision lies directly to the south of the pillars. The court found that, although there is no curb cut at the wider opening, the curb has been worn down by vehicular use. The contested area is approximately 708 square feet in size, and occupies the space between the pillars and the southwest edge of the property. The plaintiffs consider the pillars to be the entrance to their driveway and the contested area to be part of their driveway. The defendants, however, view the pillars to be a public entrance to the subdivision and the contested area to be a portion of "Shorefront Park" or "Private Way," which they claim is a public roadway.

The court found that the contested area is not included in the title or deed to the plaintiffs' property. The plaintiffs, however, claim that the Cocchia family

acquired ownership to the contested area by adverse possession because they treated the area as their driveway for at least fifteen years after they acquired the property in 1959. The plaintiffs also claimed that they have treated the contested area as their driveway since they acquired title to the property in 1992. The defendant Urban S. Mulvehill (Mulvehill) countered the plaintiffs' claim with two arguments: (1) the contested area was dedicated to and accepted by the city in 1930, along with all of the other roadways in the subdivision, and property owned by a municipality may not be adversely possessed; and (2) even if the contested area were not included in the 1930 dedication, neither the plaintiffs' nor the Cocchias' use of the area was sufficient to establish title to the contested area in them via adverse possession. The plaintiffs responded to Mulvehill's arguments by asserting that, even if the contested area had been dedicated to the city, the city had abandoned the area by failing to maintain it or otherwise treat it as a public roadway.

In support of their claim, the plaintiffs placed into evidence the April, 1930 minutes of the city council, which include the following relevant language:

"To the Honorable Mayor and Council of the City of Norwalk:

"Gentlemen:

"The Shorefront Park Company hereby petitions for the acceptance of the highways shown on [the] attached map of Shorefront Park. All highways asked to be accepted are fifty (50) feet in width and in good condition and in all of them have been laid water and gas mains at the Company's expense. The City is collecting taxes on twenty-six houses erected in the development and up to date has not been obliged to expend any money for construction or repairs.

"Dated at Norwalk, Conn. this 18th day of March 1930.

"The Shorefront Park Company

"By (Signed) Mark Haut

"Its Secretary

"Councilman Charpentier stated that Mr. Jutten investigated the condition of the highways in Shorefront Park and found them in good condition and recommends their acceptance.[3]

"A motion that the highways in Shorefront Park as designated on map entitled 'Map of Part of Shorefront Park Property of The Shorefront Park Co. Norwalk Conn. Aug. 1924' be accepted was seconded and carried." (Footnote added.)

The plaintiffs claim, on the basis of the April, 1930 minutes, that although the city may have purported to accept all of the highways depicted on the subdivision map, it could not have accepted any roads fewer than

fifty feet in width because those roads were never offered. The plaintiffs claim, therefore, that neither the contested area nor the private way leading to it could have been accepted by the city because the road at that location is only sixteen feet wide.[4]

The court found that, according to the city's land records, The Shorefront Park Company remains the record owner of the contested area, but that it is unclear from the complaint or the record whether The Shorefront Park Company remains the record owner of all of the subdivision's highways or only the small portion of road claimed by the plaintiffs. The subdivision map on which the city council relied in 1930 was entered into evidence by the plaintiffs as exhibit 8. The subdivision map depicts one continuous highway that winds throughout the subdivision and is labeled at various locations either "Shorefront Drive" or "Private Way," the latter being the designation given to the section of the highway where the contested area is located. Markings indicating a fifty foot width appear at sections of the highway labeled "Private Way," as well as at sections labeled "Shorefront Drive."

The court first determined whether the actions taken at the April, 1930 meeting of the city council are evidence of a dedication and acceptance of the contested area. In doing so, the court relied on *Vernon* v. *Goff*, 107 Conn. App. 552, 945 A.2d 1017, cert. denied, 289 Conn. 920, 958 A.2d 154 (2008), for guidance: "From early times, under the common law, highways have been established in this state by dedication and acceptance by the public. . . . [T]wo elements are essential to a valid dedication: (1) a manifested intent by the owner to dedicate the land involved for the use of the public; and (2) an acceptance by the proper authorities or by the general public. . . . No particular formality is required in order to dedicate a parcel of land to a public use; dedication may be express or implied. . . . Whether there has been a dedication and whether there has been an acceptance present questions of fact. . . . Likewise, the determination of the extent to which there has been an acceptance of a street involves a question of fact." (Internal quotation marks omitted.) Id., 556–57.

The court also noted that "[w]hether there has been a dedication and whether there has been an acceptance are questions of fact . . . for which the burden of proof rests upon the [party who claims that the property in question belongs to the public]." (Citation omitted; internal quotation marks omitted.) *Drabik* v. *East Lyme*, 234 Conn. 390, 397, 662 A.2d 118 (1995). A party claiming title by adverse possession, however, must prove, by clear and convincing evidence, that the contested area was not dedicated to the city. See *American Trading Real Estate Properties, Inc.* v. *Trumbull*, 215 Conn. 68, 80, 574 A.2d 796 (1990); *Shepard Group, LLC* v. *Arnold*, 124 Conn. App. 41, 44, 3 A.3d 975 (2010).

In the present case, the trial court found, by a preponderance of the evidence, the existence of both an express dedication of the highways in the subdivision and an express acceptance of the contested area by the city, and that the plaintiffs had failed to prove, by clear and convincing evidence, that the contested area was not dedicated with the rest of the subdivision's highways. The court found that the minutes of the April, 1930 city council meeting record The Shorefront Park Company petitioning the city "for the acceptance of the highways shown on attached map of Shorefront Park." (Internal quotation marks omitted.) The minutes state that "[a]ll highways asked to be accepted are fifty (50) feet in width and in good condition and in all of them have been laid water and gas mains at the Company's expense." The minutes also recorded Charpentier's representation that Jutten had investigated "the condition of the highways in Shorefront Park and found them in good condition and recommends their acceptance"; and that a motion was made and seconded that "the highways in Shorefront Park as designated on map entitled 'Map of Part of Shorefront Park Property of The Shorefront Park Co. Norwalk Conn. Aug. 1924' be accepted . . . ." Moreover, the motion was carried.

The plaintiffs contended at trial that the contested area could not have been dedicated because it is fewer than fifty feet wide. The court found, however, that the city council's acceptance made no mention of the width of the highways as a condition of acceptance and The Shorefront Park Company did not object to the acceptance of all of the highways designated on the subdivision map. The court found that the map relied on by the city council, plaintiffs' exhibit 8, reveals that the subdivision highways consist of a single winding road that, at many points, is fifty feet wide, but that narrows before reaching the contested area.[5] The court concluded that it did not logically follow from a description of a highway as being fifty feet wide that, if the highway narrows at some point, the narrower portion is not, nonetheless, a portion of the same highway.

The court rejected the plaintiffs' argument that The Shorefront Park Company intended to exclude portions of highway narrower than fifty feet from the dedication. The court found the argument unconvincing, particularly in the absence of any evidence that The Shorefront Park Company asserted any right with respect to the portions of highway fewer than fifty feet wide during the thirty years between the dedication and the company's dissolution in 1959. Also, the court found no evidence that the shareholders of The Shorefront Park Company transferred any interest in those portions of roadway during their lives or devised any interest in the roadway as part of their estates.

The court concluded that the plaintiffs had failed to prove, by clear and convincing proof, that the city's

acceptance was not express and did not include the contested area. The city council passed a motion to accept all of Shorefront Park's highways, as designated on the 1924 map, without reference to the width of the highways. Because it had determined that all of the highways, including the contested area, were expressly offered by The Shorefront Park Company, it found that the city's express acceptance could and did include them.

The court further found that the city did not abandon the contested area and that the plaintiffs had not obtained title to the contested area by way of adverse possession. The court, therefore, rendered judgment in favor of the defendants. Thereafter the plaintiffs appealed.

The plaintiffs subsequently filed a consolidated motion for articulation and motion for rectification, which the court granted in part and denied in part. In its ruling on the plaintiffs' consolidated motion, the court stated that "the evidence supports an understanding of The Shorefront Park Company's intention and actions as an express dedication of all of the highways within Shorefront Park to the city of Norwalk, without any exclusion or retaining of interest in portions of the highways which were less than fifty feet wide. . . . This finding supports the court's ultimate conclusion that the contested area is part of a public highway belonging to the city of Norwalk. . . . The court, however, was not presented with and did not consider evidence regarding a dispute as to the dedication and acceptance of any other particular segment of Shorefront Park highway. The court's holding, therefore, is confined to its ultimate conclusion regarding the contested area." (Citations omitted; internal quotation marks omitted.)

Additional facts will be set forth as necessary.

I

The plaintiffs first claim that the court's finding that The Shorefront Park Company dedicated all of the roads depicted on the subdivision map for the use of the city was clearly erroneous. We disagree.

We first set forth the applicable standard of review. "Our review of the factual findings of the trial court is limited to a determination of whether they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings." (Internal quotation marks omitted.) *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 328, 801 A.2d 902, cert. denied, 261

Conn. 933, 806 A.2d 1070 (2002).

An understanding of the law and history of establishing highways in this state provides a useful background for our resolution of the plaintiffs' claim. Public highways may be established by one of four methods: "(1) through the direct action of the legislature; (2) through authorized proceedings involving an application to a court; (3) through authorized proceedings by agents appointed for that purpose, such as selectmen of towns . . . and specified authorities of cities and boroughs . . . (4) through private dedication of land for that purpose and its acceptance by the public." (Citations omitted; internal quotation marks omitted.) *Montanaro* v. *Aspetuck Land Trust, Inc.*, 137 Conn. App. 1, 9, 48 A.3d 107, cert. denied, 307 Conn. 932, 56 A.3d 715 (2012), quoting *Makepeace* v. *Waterbury*, 74 Conn. 360, 361, 50 A. 876 (1902).

"The layout of a street or highway by a private person, company or corporation and the regulation of its width unless determined otherwise by authority have been a part of our statute law since 1899. Public Acts 1899, c. 205 § 2; *Windsor* v. *Whitney*, 95 Conn. 357, 365, 111 A. 354 [1920]. Since that time our statutes have provided that no street or highway laid out by any private person, company or corporation shall be opened to the public (1) until the grade, width and improvements of such street or highway shall have the written approval of the selectmen of the town or, in case the location is within the limits of a city or borough, the approval of the common council of the city or the warden and burgesses of the borough or (2) until such approval has been filed in the office of the clerk of the town, city or borough, as the case may be." *Thompson* v. *Portland*, 159 Conn. 107, 111–12, 266 A.2d 893 (1970).[6]

In *Stratford* v. *Fidelity & Casualty Co.*, 106 Conn. 34, 39, 137 A. 13 (1927), our Supreme Court said that the dedication statute in effect at that time "has to do with the layout and improvement of roads or streets by individuals or private corporations, and the approval of the selectmen is an approval of the layout and opening of private ways and not of public highways; it looks to the possibility of their becoming public highways, but does not constitute an acceptance of them as such." "Immediately following this decision, the legislature enacted chapter 248 of the Public Acts of 1927. Section 1 of that act (now General Statutes [Rev. to 1966] § 13a-48) gave specific authority to a municipality at any annual or special meeting held for that purpose to accept as a public highway any street or highway situated in the municipality. Section 2 validated the action of any municipality theretofore taken in accepting any highway as a public highway. Where the legislature establishes the conditions necessary for a dedication of land for public purposes, the statutory provisions are controlling." (Internal quotation marks omitted.)

*Thompson* v. *Portland*, supra, 159 Conn. 113. This historical review concerns the law in effect at the time the city accepted the highways in Shorefront Park in 1930.

"Dedication is an appropriation of land to some public use, made by the owner of the fee, and accepted for such use by and in behalf of the public. . . . Both the owner's intention to dedicate the way to public use and acceptance by the public must exist, but the intention to dedicate the way to public use may be implied from the acts and conduct of the owner, and public acceptance may be shown by proof of the actual use of the way by the public. . . . Thus, the two elements are essential to a valid dedication: (1) a manifested intent by the owner to dedicate the land involved for the use of the public; and (2) an acceptance by the proper authorities or by the general public. . . . No particular formality is required in order to dedicate a parcel of land to a public use; dedication may be express or implied. . . . Whether there has been a dedication and whether there has been an acceptance present questions of fact." (Citations omitted.) *Meshberg* v. *Bridgeport City Trust Co.*, 180 Conn. 274, 279, 429 A.2d 865 (1980). "The approval of a proposed subdivision and the acceptance of a public street are entirely separate and distinct proceedings." (Internal quotation marks omitted.) Id., 280.

In the present case, the trial court found, on the basis of the evidence presented, specifically, the minutes of the April, 1930 city council meeting and the subdivision map of August, 1924, that The Shorefront Park Company dedicated the highways within Shorefront Park to the city and that the city accepted the highways. On appeal, the plaintiffs do not contend that the council did not accept the dedication of highways on the subdivision map; they contend that the only highways the council accepted were those fifty feet wide. Specifically, they point to the second sentence of the minutes of the council meeting, which states: "All highways asked to be accepted are fifty (50) feet in width and in good condition and in all of them have been laid water and gas mains at the Company's expense." We disagree with the plaintiffs, as the construction of the language in the council minutes does not support such a conclusion.

To resolve the plaintiffs' claim, we examine the April, 1930 council minutes. The Shorefront Park Company petitioned the mayor and city council "for the acceptance of the highways shown on [the] attached map of Shorefront Park." It is a simple declaratory sentence asking the city to accept the highways depicted on the subdivision map, without limitation or qualification as to the highways on the map.[7] The following sentence is another simple declaratory sentence: "All highways asked to be accepted are fifty (50) feet in width and in good condition and in all of them have been laid water and gas mains at the Company's expense." Logically,

"[a]ll highways" must refer to the prior sentence and the highways on the attached map. The remainder of the sentence describes the width of the highways, their condition, and states that water and gas mains have been laid at the company's expense. Although the language of the second sentence is descriptive, it is not conditional. In other words, the second sentence does not exclude any of the highways on the subdivision map, or any portion of them.

Councilman Charpentier stated that Jutten had investigated the condition of the highways in Shorefront Park and found them to be in good condition and recommended their acceptance. A motion that "the highways in Shorefront Park as designated on map entitled 'Map of Part of Shorefront Park Property of The Shorefront Park Co. Norwalk Conn. Aug. 1924' be accepted seconded and carried." The clear intent of the motion was for the council to accept the highways in Shorefront Park as depicted on the subdivision map without qualification, clarification, or limitation.

As our Supreme Court stated in *Thompson* v. *Portland*, supra, 159 Conn. 111, "no street or highway laid out by any private person, company or corporation shall be opened to the public (1) until the grade, width and improvements of such street or highway shall have the written approval of the . . . common council of the city . . . ." The city council in the present case accepted the report of Jutten that the highways The Shorefront Park Company was offering for dedication were in good condition. The minutes do not reflect any discussion or concern regarding the width of the highways as depicted on the subdivision map.

As further evidence that the city accepted all of the highways depicted on the subdivision map, there is nothing otherwise in the record to suggest that The Shorefront Park Company objected to the public's use of the highways in Shorefront Park at any time until the company was dissolved in 1959. We, therefore, conclude that the court properly found that the highways depicted on the subdivision map are public roadways, including the contested area.

As to the plaintiffs' claim that the contested area is private property, there is no evidence in the record that the plaintiffs hold title to the contested area. Richard McGannon, an attorney specializing in real property and title matters, testified that The Shorefront Park Company owned the land, including the roadbeds, for what became the subdivision. In McGannon's opinion, the roads were private in 1924 and throughout the chain of title there was no record of a conveyance of title to the roads. The Shorefront Park Company did not convey an ownership interest in the road to the centerline. McGannon's title search of the plaintiffs' property demonstrated that the deed did not convey the roadbed to a purchaser.

For the foregoing reasons, the plaintiffs' claim that the court's determination that The Shorefront Park Company had dedicated all of the roads depicted on the subdivision map for the use of the city was clearly erroneous fails.

II

The plaintiffs' second claim is that the court improperly required them to rebut the city's acceptance of the highways in the subdivision by clear and convincing proof. Although we disagree with the plaintiffs' claim, the claim in and of itself is without consequence to their appeal, as the trial court found by a preponderance of the evidence that the highways depicted in the subdivision map, including the contested area, were dedicated by The Shorefront Park Company and accepted by the city. See part I of this opinion. Moreover, the court found that the highways in Shorefront Park, including the contested area, were shared by the public. See part III of this opinion. The plaintiffs' claim therefore fails. Despite our conclusion that the plaintiffs' claim does not affect the outcome of their appeal, we take the opportunity to explain that it fails as a matter of law.

The plaintiffs take exception to the following language in the court's memorandum of decision and iterated in its response to the plaintiffs' motion for rectification. "The burden of proving a dedication and acceptance, by a preponderance of the evidence, generally falls upon the party who claims that the property in question belongs to the public. . . . But, because a party claiming title by adverse possession must prove his or her claim by clear and positive proof . . . it falls to the plaintiffs in this case to prove, by clear and positive proof, that the contested area was not dedicated to the city, or if it was, that the city abandoned it, since property owned by a municipality generally cannot be adversely possessed." (Citations omitted.)

"Where title is claimed by adverse possession, the burden of proof is on the claimant. . . . The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner. . . . The use is not exclusive if the adverse user merely shares dominion over the property with other users. . . . Such a possession is not to be made out by inference, but by clear and positive proof. . . . In the final analysis, whether possession is adverse is a question of fact for the trier. . . . The doctrine of adverse possession is to be taken strictly." (Citations omitted; internal quotation marks omitted.) *Roche* v. *Fairfield*, 186 Conn. 490, 498–99, 442 A.2d 911 (1982).

Our Supreme Court has held that "property that is

held in fee simple ownership by municipalities must be presumed to be held for public use. It follows that the party seeking title by adverse possession must bear the burden of rebutting that presumption. Municipal immunity from adverse possession is the rule and not the exception, and we have consistently held that the party seeking to acquire title by adverse possession bears the burden of proving all the elements of adverse possession." *American Trading Real Estate Properties, Inc.* v. *Trumbull*, supra, 215 Conn. 80.

Moreover, the plaintiffs' claim overlooks the following findings and conclusions of the court. "Under either a preponderance or clear and convincing proof standard, the court finds that the evidence supports an understanding of The Shorefront Park Company's intentions and actions as an express dedication of all of the highways within Shorefront Park to the city of Norwalk, without any exclusion or retaining of interest in portions of the highways which were less than fifty feet wide. The court notes also that [the] identification of the contested area [in the subdivision map] as part of a 'Private Way' is of no consequence, since several other portions of highway on the map, many marked as fifty feet wide, are so labeled, and the plaintiffs do not contend that those sections of the road were exempt from The Shorefront Park Company's dedication to the city.

"The plaintiffs have also failed to prove, by clear and convincing proof, that the city of Norwalk's acceptance was not express and did not include the contested area. Again, a motion to accept all of Shorefront Park's highways, as designated on the map, was passed without any reference to the width of the highways. Because the court has determined that all of the highways, including the contested area, were expressly offered, the court finds that the [city's] express acceptance could and did include them." (Footnote omitted.)

As we explained in part I of this opinion, the court properly found by a preponderance of the evidence that the highways on the subdivision map were expressly dedicated by The Shorefront Park Company and were expressly accepted by the city. Our Supreme Court has held that municipalities are immune from claims of adverse possession. See *American Trading Real Estate Properties, Inc.* v. *Trumbull*, supra, 215 Conn. 80. Moreover, on the basis of our review of the record, including the evidence, we conclude that the plaintiffs could not prevail on their claim of adverse possession because the evidence demonstrates that the contested area is shared by the public. See part III of this opinion.

Even if the plaintiffs had the legal right to claim title to the contested area, they could not prevail because the court found that their use of the contested area was shared by the public. "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for

fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his [or her] own and without the consent of the owner." (Internal quotation marks omitted.) *Schlichting* v. *Cotter*, 109 Conn. App. 361, 364–65, 952 A.2d 73, cert. denied, 289 Conn. 944, 959 A.2d 1009 (2008). "Because adverse possession is a question of fact for the trier . . . the court's findings as to this claim are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A trial court's findings in an adverse possession case, if supported by sufficient evidence, are binding on a reviewing court . . . ." (Internal quotation marks omitted.) *Mulle* v. *McCauley*, 102 Conn. App. 803, 809, 927 A.2d 921, cert. denied, 284 Conn. 907, 931 A.2d 265 (2007). The plaintiffs' claim therefore fails.

### III

The plaintiffs' third claim is that the trial court's finding that dominion over the contested area is shared by the public is clearly erroneous. We disagree.

At trial, the plaintiffs argued that, even if the contested area was dedicated to the city in 1930, municipal immunity to adverse possession was lost when the city abandoned the area by failing to maintain it or otherwise treat it as a public road. In its memorandum of decision, the court noted that "[t]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property for his [or her] own and without the consent of the owner." (Internal quotation marks omitted.) *Shepard Group*, *LLC* v. *Arnold*, supra, 124 Conn. App. 44. "The use is not exclusive if the adverse user merely shares dominion over the property with other users." *Whitney* v. *Turmel*, 180 Conn. 147, 148, 429 A.2d 826 (1980). "A finding of [a]dverse possession is not to be made out of inference, but by clear and positive proof. . . . The burden of proof is on the party claiming adverse possession." (Internal quotation marks omitted.) *Shepard Group*, *LLC* v. *Arnold*, supra, 44.

The court continued, "[t]itle to realty held in fee by a state or any of its subdivisions for a public use cannot be acquired by adverse possession." (Internal quotation marks omitted.) *Campanelli* v. *Candlewood Hills Tax District*, 126 Conn. App. 135, 140, 10 A.3d 1073 (2011). "In light of the myriad of public uses that may be advanced through public ownership of undeveloped lands . . . property that is held in fee simple ownership by municipalities must be presumed to be held for public use. It follows that the party seeking title by adverse possession must bear the burden of rebutting that presumption. Municipal immunity from adverse

possession is the rule and not the exception, and we have consistently held that the party seeking to acquire title by adverse possession bears the burden of proving all the elements of adverse possession." *American Trading Real Estate Properties, Inc.* v. *Trumbull,* supra, 215 Conn. 80.

Furthermore, the two methods of terminating a town's responsibility for a road differ. "A highway may be extinguished by direct action through governmental agencies, in which case it is said to be discontinued; or by nonuser by the public for a long period of time with the intention to abandon, in which case it is said to be abandoned." (Internal quotation marks omitted.) *Doolittle* v. *Preston,* 5 Conn. App. 448, 451, 499 A.2d 1164 (1985); see also R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 49:5, p. 112 ("Once it is shown that the road was a public highway at some point in the past, it remains one under Connecticut law no matter what its state of improvement or deterioration may be unless that status was terminated in one of two ways, (1) abandonment or (2) discontinuance as provided by General Statutes § 13a-49.").[8] The statutory method of discontinuing the use of a highway must be pursued strictly. *Doolittle* v. *Preston,* supra, 451.

At trial, the plaintiffs made no claim that the city had discontinued use of the contested area by a majority vote of the selectmen pursuant to § 13a-49. The court found that the plaintiffs had the burden of proving abandonment by clear and convincing evidence. Abandonment requires proof of both a long period of nonuse by the public and an intention to abandon. *Montanaro* v. *Aspetuck Land Trust, Inc.*, supra, 137 Conn. App. 21. It is nonuse by the public, not the municipality, that must be proven. The parties presented conflicting evidence as to the first element of abandonment, i.e., a long period of nonuse by the public.

In its memorandum of decision, the court summarized the testimony of several witnesses. Dominic Cocchia and Peter Cocchia, sons of Mary Ann Cocchia, testified that they moved into 40 Quintard Avenue in 1959. They understood that the contested area was part of their driveway where they played games and parked the family motor vehicles. Their father required them to clean up litter, weed, and shovel snow from the contested area. In 1970, their father had it paved. Neither Dominic Cocchia nor Peter Cocchia could recall any action the family took to exclude the public from the contested area or to prohibit the public from entering or exiting the subdivision through the stone pillars.

Merritt testified that she had resided at 78 Shorefront Park since 1944 and over a twenty year period, she had walked four dogs over the contested area and through the pillars approximately 200 times a year. She also testified that she regularly saw pedestrians pass through

the pillars, including women with baby carriages, children on bicycles, and other dog walkers. Merritt and other motorists drove their vehicles through the pillars to enter or exit the subdivision. She never witnessed any barrier or notice denying the public entry to the contested area.

Mulvehill testified that he had been a resident of Shorefront Park since 1977. According to him, the city plows the subdivision every year and pushes snow into the contested area. He has never seen a chain, fence, sign, name on the pillars, or other circumstance that would suggest that the plaintiffs claimed possession of the contested area. Patricia Audet, a resident of 25 Shorefront Drive since 1977, testified that she frequently drove through the pillars to enter or exit the subdivision. Significantly, the court viewed the contested area and disclosed to the parties that, while he was parked on Quintard Avenue, he observed a woman walk south on Quintard Avenue, through the stone pillars, and proceed down Shorefront Drive.

The court considered the conflicting evidence and, in its memorandum of decision, found that the testimony of the plaintiffs' witnesses was not more likely to be true than the testimony of the defendants' witnesses. The court, therefore, concluded that the public's use of the contested area and of the stone pillars as a public entrance to the subdivision fell somewhere between the levels suggested by the parties, but not so low as to satisfy the nonuser prong of abandonment. According to the court, the plaintiffs therefore failed to carry their burden of proving, by clear and convincing evidence, that public use of the contested area or stone pillar entrance was so infrequent between 1959 and 1974, or between 1974 and the present, to satisfy the first element of abandonment. Rather, the evidence indicated to the court that the use of the contested area was shared by the owners of 40 Quintard Avenue and the general public. The court explained: "It is not essential . . . that large numbers of the public participate in the user, or that the user be one which results in a large volume of travel. Each situation must be judged in relation to its own surroundings and conditions, and with a regard for the number of persons who would have occasion to use the way. . . . It is only necessary that those who would be naturally expected to enjoy it have done so at their pleasure." (Internal quotation marks omitted.) *Granby* v. *Feins*, 154 Conn. App. 395, 404, 105 A.3d 932 (2014).

The essence of the plaintiffs' claim on appeal is that their witnesses, Dominic Cocchia and Peter Cocchia, lived at the property during the period in which adverse possession is claimed and the only witness for the defendants who could testify as to the use of the contested area during the adverse period was Merritt. The plaintiffs acknowledge that it is in the discretion of the

trial court to accept her testimony over that of Dominic Cocchia and Peter Cocchia, but not if its findings were not reasonable and the reviewing court is left with the impression that the finding was a mistake. See *Stratford* v. *Jacobelli*, 317 Conn. 863, 870, 120 A.3d 500 (2015). The plaintiffs specifically argue that the court's finding is clearly erroneous because Merritt testified that she was of the opinion that the plaintiffs should not acquire the contested area by adverse possession. They claim, therefore, that such testimony makes her an interested witness, not one who is testifying on the basis of what she has seen.

"[W]e must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. . . . [W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . ." (Internal quotation marks omitted.) *Rana* v. *Terdjanian*, 136 Conn. App. 99, 113, 46 A.3d 175, cert. denied, 305 Conn. 926, 47 A.3d 886 (2012).

"[E]vidence is not insufficient . . . because it is conflicting or inconsistent. [The trier of fact] is free to juxtapose conflicting versions of events and determine which is more credible. . . . In this regard, [w]e are not in a position to question the court's credibility finding. The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party."[9] (Citation omitted; internal quotation marks omitted.) *Masse* v. *Perez*, 139 Conn. App. 794, 798, 58 A.3d 273 (2012), cert. denied, 308 Conn. 905, 61 A.3d 1098 (2013).

A court properly may take into account testimony from a witness with an interest in the outcome of the case. See *Beaucar* v. *Bristol Federal Savings & Loan Assn.*, 6 Conn. Cir. Ct. 148, 154, 268 A.2d 679 (1969). "[A] trial court is at liberty to discredit any witness or a multitude of witnesses, if it deems that it has cause to do so." *Antenucci* v. *Hartford Roman Catholic Diocesan Corp.*, 142 Conn. 349, 357, 114 A.2d 216 (1955). "[I]t is futile to assign error involving the weight of testimony or the credibility of witnesses." *Hartford-Connecticut Trust Co.* v. *Putnam Phalanx*, 138 Conn. 695, 699, 88 A.2d 393 (1952) (witness former trustee of defendant).

On the basis of our review of the record, the law, and the court's memorandum of decision, we conclude

that the court's finding that the contested area was shared by the plaintiffs and the general public is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The individual defendants were owners of property adjacent to Shorefront Park, a roadway in the city, and the descendants of the original owners of The Shorefront Park Company. The individual defendant property owners were Thursa June Merritt, Mary Merritt, Urban S. Mulvehill, Diane K. Mulvehill, James A. Smith, Joanne C. Smith, William Faulkenstein, and Kaori O'Brien. The individual defendant descendants were John Keogh III, M. Douglas Keogh, William Allen Keogh, Stephen B. Keogh, Tara Quinn-Siegel, and Jacqueline F. Quinn. The plaintiffs impleaded numerous other individuals who had a possible interest in property, but none appeared in the trial court.

The following defendants appeared at trial: the city, Thursa June Merritt, Urban S. Mulvehill, and The Shorefront Park Improvement Association, Inc. Those defendants filed appearances in this appeal, but only Urban S. Mulvehill, a self-represented party, filed a brief and argued on appeal. The defendants, as used in this opinion, refers to only those defendants who appeared at trial.

[2] "Shorefront Park" is both a street address within the subdivision and the name of the subdivision itself.

[3] The court found that the plaintiffs alleged that Jutten was employed by the city's Department of Public Works. Another section of the minutes contains the words "A.F. Jutten Commissioner."

[4] The court found that the road widens to fifty feet where it meets the border of the plaintiffs' property.

[5] Under either a preponderance of the evidence or clear and convincing proof standard, the court found that the evidence supports an understanding of The Shorefront Park Company's intentions and actions as an express dedication of all of the highways within Shorefront Park to the city, without any exclusion or retaining of interest in portions of the highways that were fewer than fifty feet wide. Although the plaintiffs' exhibit 8 identifies the contested area as part of a "Private Way," the court found that to be of no consequence, as several other portions of the highway on the map, many marked as fifty feet wide, are similarly labeled. The plaintiffs did not contend that those sections of road were exempt from The Shorefront Park Company's dedication to the city.

[6] "Various minor changes were made in the statute, but no major change occurred until 1959, when the statute was amended to require the approval of the planning commission where one existed in such town, city or borough and where the commission had adopted subdivision regulations." *Thompson* v. *Portland*, supra, 159 Conn. 112.

[7] If Shorefront Park Company had wished to limit or restrict the dedication, it might have included a restrictive phrase in the sentence, such as, "for the acceptance of the highways *that are fifty feet wide* shown on the attached map."

[8] General Statutes § 13a-49 (a) (1) provides in relevant part: "The selectmen of any town may, subject to approval by a majority vote at any regular or special town meeting, by a writing signed by them, discontinue any highway or private way . . . in its entirety . . . ."

[9] We also note the jury instructions given with respect to possible bias or motive of witnesses generally: "In weighing the testimony of a witness, you should consider his or her demeanor on the witness stand, whether his or her testimony was reasonable or unreasonable, the basis of the witness' knowledge or opportunity to observe the events that he or she testified about, whether his or her testimony was supported or contradicted by other testimony, his or her motive to tell the truth or not to tell the truth, the probability or improbability of his or her testimony. . . .

"You also have a right to consider whether any witness has shown bias or prejudice or has a personal interest or professional interest in the outcome of the case which might cause him or her to testify to something other than the truth or to color or embellish his or her testimony. However, even if you find that the witness is an interested witness, has some stake in the matter, remember, there's no legal presumption that he or she did not tell the truth nor is there any legal presumption that a disinterested witness did, in fact, tell the truth. The question of the interest of a witness and the effect upon his or her testimony is for you to decide from the evidence in

the case." (Internal quotation marks omitted.) *State* v. *Patterson*, 276 Conn. 452, 466 n.10, 886 A.2d 777 (2005); see also 2 D. Wright & W. Ankerman, Connecticut Jury Instructions (Civil) (4th Ed. 1993) § 641, pp. 1017–18.

---