******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

CHRISTOPHER HOUK NICHOLS ET AL.
*v.* TOWN OF OXFORD
(AC 39366)

DiPentima, C. J., and Lavine and Pellegrino, Js.

*Syllabus*

The plaintiffs brought this action, pursuant to statute (§ 13a-103), seeking
an order directing the trial court to order the defendant town of Oxford
to repair and maintain unimproved sections of a certain highway. The
trial court denied the relief sought, and the plaintiffs appealed to this
court, claiming that the court erred in finding that certain sections of
the road did not comprise part of a highway and that, even if those
sections of the road once comprised part of a highway, they since had
been abandoned. *Held* that the trial court's finding that the sections of
the highway at issue had been abandoned was not clearly erroneous:
abandonment of a highway may be inferred from circumstances or
presumed from long continued neglect, and there was sufficient evidence
in the record demonstrating that the disputed sections were not part
of a highway, as the court found that by the time the action was com-
menced, at least twenty-five years had passed since the unorganized
public last used the challenged sections of the road as a highway, and
for as long, the town refused to acknowledge those sections as part of
the road, did not develop or maintain them, and had no plans to develop
or maintain them in the future, all of which suggested an intent to
abandon; moreover, this court deferred to the credibility determinations
and weighing of the facts by the trial court, which weighed all the
evidence and testimony carefully, and personally had visited the road
and drove and walked its entire length.

Argued February 22—officially released June 19, 2018

*Procedural History*

Action for an order directing the named defendant
to repair and maintain unimproved sections of a certain
highway, brought to the Superior Court in the judicial
district of Ansonia-Milford, where the court, *Tyma, J.*,
granted the plaintiffs' motion to implead James H. Brew-
ster et al. as defendants; thereafter, the court, *Stevens,
J.*, granted the plaintiffs' motion to bifurcate hearing;
subsequently, the case was withdrawn in part; there-
after, the court, *Stevens, J.*, granted the defendant John
J. Lucas' motion to be cited in as a party defendant;
subsequently, the matter was tried to the court, *Stevens,
J.*; judgment in favor of the defendants, from which the
plaintiffs appealed to this court; thereafter, the court,
*Stevens, J.*, granted in part the plaintiffs' motion for
articulation. *Affirmed.*

*Robert J. Nichols* for the appellants (plaintiffs).

*Michael S. Hillis*, with whom was *Kevin Condon*, for
the appellee (defendant Town of Oxford).

*Opinion*

DiPENTIMA, C. J. The plaintiffs[1] petitioned the trial court, pursuant to General Statutes § 13a-103,[2] for an order directing one of the defendants, the town of Oxford (town),[3] to repair and maintain unimproved sections of a highway,[4] Old Good Hill Road (road), located in the town. The trial court denied the relief sought. The plaintiffs appealed, claiming that the court erred in finding that (1) sections two, three and four of the road did not comprise part of a highway, and (2) even if those sections of the road had once comprised part of a highway, they since have been abandoned. We conclude that the court properly found that sections two, three and four of the road have been abandoned, and, accordingly, affirm the judgment of the trial court.[5]

In its thorough and thoughtful memorandum of decision, the trial court found the following facts. "[The road] is a long, winding road in Oxford . . . intersecting Good Hill Road to the north and Freeman Road to the south. [The road] can be described as consisting of four sections. Section one intersects with Good Hill Road. Section one is paved and is maintained by the town. Section one is not specifically at issue in this case because there is no dispute that it is accepted and maintained by the town. The next part of the road, section two, is an unpaved, unimproved dirt road. Nichols' property is located near the end of section two. Section two is passable either by foot or a four-wheel drive vehicle. Section two is not maintained by the town. Section three starts just beyond Nichols' home, and extends down a long, steep hill. While there are some pathways, there is no clearly visible, vehicular roadway in this area. Section three is part of a mountainous area and is steep, rutted and rugged. It is passable only by foot. Section three is not maintained by the town. Section three ends at a paved area near the bottom of the hill. This paved area is part of the driveway of 110 Freeman Road. This property is owned by [the] defendant Lucas. This paved area ends on Freeman Road. During the trial, this paved, driveway area was referred to as section four of [the road]. Sections two and three are referred to as the unimproved sections of the road. With the parties' consent and participation, the court inspected the full length of [the road] on November 9, 2015, driving over sections one and two, and walking over sections three and four.

"The primary areas at issue in this case are sections two and three. The town does not maintain these areas and the plaintiffs contend that the town is required to do so. Section four, Lucas' driveway, is implicated in this dispute because the plaintiffs' claims regarding sections two and three are premised on their argument that [the road] in its *entirety* has been historically dedicated and accepted as a [highway]. . . .

"In 2011, Nichols purchased 108 Old Good Hill Road, consisting of two adjoining parcels. A single family home is on one parcel, and the other parcel is unimproved land. As with other property owners, [the road] is the only way to access his home. His house is the only building on section two of the road. After purchasing the property, Nichols brought in an excavator to smooth the road and to lay processed stone for a base, but he received a cease and desist order from the then town's zoning enforcement official . . . . This order indicated that his excavation work was without permits and in violation of town zoning regulations. Additionally, the order stated that 'consent from the Board of Selectmen of [the town] is required to perform any activity and improvements on town property.' . . . Nichols indicated that town improvements of [the road] would make access to his property more convenient." (Citation omitted; emphasis in original.)

In accordance with § 13a-103, the plaintiffs brought the underlying action on November 20, 2012. On March 2, 2015, the court granted the plaintiffs' motion to bifurcate so that the only issue at trial was whether sections two, three and four of the road comprised part of a highway. By way of special defense, the defendants pleaded, inter alia, that the road had been abandoned.[6] The matter was tried to the court in September and October, 2015. The parties filed posttrial briefs in February and March, 2016, and the court heard final argument on June 14, 2016. On June 21, 2016, the court rendered judgment in favor of the defendants, finding that (1) the challenged sections of the road had not become a highway under the common law doctrine of dedication and acceptance[7] and (2) in the alternative, the defendants had proved by a fair preponderance of the evidence that sections two, three and four of the road had been abandoned. The plaintiffs appealed. Additional facts will be set forth as necessary.

We turn now to the plaintiffs' claim that the court erred in concluding that the defendants had proved by a preponderance of the evidence that the challenged sections of the road had been abandoned. We conclude that the court did not err.

We begin with the applicable legal principles. "The questions of whether there have been dedication, acceptance and abandonment generally are recognized as questions of fact. . . . Our review of the factual findings of the trial court is limited to a determination of whether they are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Montanaro* v. *Aspetuck Land Trust, Inc.*, 137 Conn App. 1, 8, 48 A.3d 107, cert. denied, 307 Conn. 932, 56 A.3d 715 (2012). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings." (Internal quotation marks omitted.) *Drabik* v. *East Lyme*, 234 Conn. 390, 394–95, 662 A.2d 118 (1995).

"We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment." (Internal quotation marks omitted.) *Benjamin* v. *Norwalk*, 170 Conn. App. 1, 25, 153 A.3d 669 (2016). "[This court] cannot retry the facts or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 220, 435 A.2d 24 (1980).

A previously established highway "may be extinguished [1] by direct action through governmental agencies, in which case it is said to be discontinued; or [2] by nonuser[8] by the public for a long period of time with the intention to abandon, in which case it is said to be abandoned. The length of time during which such nonuser must continue on the part of the public, before the highway can be presumed to be abandoned, has not been determined in this [s]tate by statute or judicial decision. It must be a long time. . . . Such an abandonment implies, of course, a voluntary and intentional renunciation, but the intent may be inferred as a fact from the surrounding circumstances . . . . Most frequently, where abandonment has been held established, there has been found present some affirmative act indicative of an intention to abandon . . . but nonuser, as of an easement, or other negative or passive conduct may be sufficient to signify the requisite intention and justify a conclusion of abandonment. The weight and effect of such conduct depends not only upon its duration but also upon its character and the accompanying circumstances." (Citations omitted; footnote added; internal quotation marks omitted.) *Montanaro* v. *Aspetuck Land Trust, Inc.*, supra, 137 Conn. App. 20–21; see also *Benjamin* v. *Norwalk*, supra, 170 Conn. App. 21–22; R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 49:5, p. 112 ("[o]nce it is shown that the road was a public highway at some point in the past, it remains one under Connecticut law no matter what its state of improvement or deterioration may be unless that status was terminated in one of two ways, [1] abandonment or [2] discontinuance as provided by General Statutes § 13a-49").

Although the individual elements of abandonment are (1) nonuse by the public (2) for a long period of time (3) with the intent to abandon, it has long been the rule that "abandonment may be inferred from circumstances or may be presumed from long continued neglect." (Internal quotation marks omitted.) *Appeal of Phillips*, 113 Conn. 40, 45, 154 A. 238 (1931). With respect to actual nonuse, "[i]t is nonuse by the public,

not the municipality, that must be proven." *Benjamin* v. *Norwalk*, supra, 170 Conn. App. 22. Nevertheless, "[i]t is not essential . . . that large numbers of the public participate in the user, or that the user be one which results in a large volume of travel. Each situation must be judged in relation to its own surroundings and conditions, and with a regard for the number of persons who would have occasion to use the way. . . . It is only necessary that those who would be naturally expected to enjoy it have done so at their pleasure." (Citation omitted.) *Phillips* v. *Stamford*, 81 Conn. 408, 414, 71 A. 361 (1908); see also *Benjamin* v. *Norwalk*, supra, 24; *Granby* v. *Feins*, 154 Conn. App. 395, 404, 105 A.3d 932 (2014).

With respect to intent, we iterate that "negative or passive conduct may be sufficient to signify the requisite intention and justify a conclusion of abandonment;" (internal quotation marks omitted) *Montanaro* v. *Aspetuck Land Trust, Inc.*, supra, 137 Conn. App. 21; and that although "abandonment implies . . . a voluntary and intentional renunciation . . . the intent may be inferred as a fact from the surrounding circumstances . . . ." *Newkirk* v. *Sherwood*, 89 Conn. 598, 605, 94 A. 982 (1915); see also *Cornfield Point Assn.* v. *Old Saybrook*, 91 Conn. App. 539, 567, 882 A.2d 117 (2005) (intent to abandon "can also be inferred from the circumstances, such as the lack of any express plan for the future development of the property" [internal quotation marks omitted]). Logically, it is clear that *both* the public *and* the municipality must intend to abandon a highway for it truly to be abandoned. See, e.g., *American Trading Real Estate Properties, Inc.* v. *Trumbull*, 215 Conn. 68, 77–82, 574 A.2d 796 (1990) (absent evidence of intent to abandon, municipal land is presumed to be held in trust for public use); *Cornfield Point Assn.* v. *Old Saybrook*, supra, 570–73 (same). Nevertheless, municipal ownership of the fee to the roadway itself does not forestall abandonment ipso facto.[9]

With respect to the length of time required to prove abandonment, we emphasize that "[t]he length of time during which such nonuser must continue on the part of the public, before the highway can be presumed to be abandoned, has not been determined in this [s]tate by statute or judicial decision. It must be a long time." (Internal quotation marks omitted.) *Montanaro* v. *Aspetuck Land Trust, Inc.*, supra, 137 Conn. App. 20, citing *Greist* v. *Amrhyn*, 80 Conn. 280, 285, 68 A. 521 (1907). Our courts have considered this issue infrequently. Compare *Newkirk* v. *Sherwood*, supra, 89 Conn. 605 (sixty years deemed sufficient); *Hartford* v. *New York & New England Railroad Co.*, 59 Conn. 250, 260, 22 A. 37 (1890) (nonuse "for many years" is evidence of abandonment); *Benham* v. *Potter*, 52 Conn. 248, 253 (1884) (fifty years deemed sufficient); *Beardslee* v. *French*, 7 Conn. 125, 127 (18 Am. Dec. 86) (1828) ("desertion of a public road for nearly a century,

is strong presumptive evidence that the right of way has been extinguished"); *Litchfield* v. *Wilmot*, 2 Root (Conn.) 288, 290 (1795) (fifteen years of uninterrupted possession of highway bars town from recovering it); with *Brownell* v. *Palmer*, 22 Conn. 106, 120–21 (1852) (questioning, without deciding, whether twenty years was sufficient); *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 637, 644, 867 A.2d 860 (plaintiffs could not prove abandonment where, approximately eleven years prior to purchase, municipality approved permit pursuant to plot plan showing highway), cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005).

Whether the disputed sections of the road have been abandoned is a question of fact, which we review on the clearly erroneous standard. See *Montanaro* v. *Aspetuck Land Trust, Inc.*, supra, 137 Conn App. 8. On the basis of our review of the record, the law and the trial court's well-reasoned memorandum of decision, we cannot conclude that the court's finding of abandonment was clearly erroneous. The court's memorandum of decision clearly lays out its summation and assessment of each witness' testimony and all the other evidence; the court ultimately concluded that the defendants had met their burden of proving that, even if the disputed sections of the road once had comprised part of a highway, they have long since been abandoned. Specifically, the trial court summarized its factual findings as follows. "[T]he evidence regarding abandonment is conflicting. The 'indicia' of acceptance[10] . . . mitigate against a finding of abandonment, but few of these facts reflect recent incidents. The plaintiffs claim that there was substantial public use of [the road] when the Zoar Bridge existed. As previously addressed, the accuracy and credibility of this claim are questionable. Nevertheless, even the plaintiffs' position contemplates the dissipation of the public's interest and usage of [the road] after the submergence of the Zoar Bridge by the Stephenson Dam construction in 1919. Between 1919 and 1980 (about sixty years), there exists evidence of sporadic but insubstantial work on the road by the town and no evidence whatsoever of any significant public use. The evidence is undisputed that for the last twenty-five years [the road] has been a dead end road, the public has not used the unimproved section of the road and the town has not done any work on this section of the road. For well over sixty years, section four has been used primarily (if not exclusively) as part of the driveway owned by the Lucas family. Based on Watt's testimony,[11] the town has no present intention or plan to engage in any work on the road as the town's records do not show the unimproved section of the road as an accepted town highway." (Footnotes added.)

There is more than sufficient evidence for these findings in the record. The parties disputed whether the road had been used by the public at all since approximately 1919, but agreed that the road became partially

impassable sometime in the 1980s. Testimony with respect to use since then was varied. With respect to section two, there is a "dead end" sign at the end of section one where the highway terminates. Lucas testified that he had only seen one car use this section recently, and that he could recall no traffic on the road when he was young. Further, Nichols testified that he is the only homeowner along or near section two of the road. The town does not maintain or repair section two, and Watt testified that it has no intention of doing so.[12] Indeed, numerous witnesses testified that since at least the construction of the house that now belongs to Nichols, the town has not maintained or improved section two; the only improvements to section two were made either by Nichols or by the previous owner, Paul Lane, at their own expense. As a result, section two is passable only by vehicle with four wheel drive.

With respect to section three, Lucas testified that it has been impassable since a severe storm in 1982. Another witness, Robert Danielecki, who owns property adjacent to Nichols' property, testified that section three has been impassable since at least 1988. Lacinda Lane agreed that section three was washed out in a storm in the 1980s and has been impassable ever since. Photographic evidence in the record shows that section three is steep, narrow and overgrown with vegetation. The court itself concluded that section three is too rugged and steep for a vehicle to traverse.[13]

With respect to section four, although others may once have used section four, Lacinda Lane testified that Lucas' uncle openly and deliberately blocked access thereto with his truck to prevent her and her husband, as well as the general public, from using that section in the 1980s. There is no indication that it has been used as anything other than a private driveway since then; Danielecki testified that, since at least 1990, he had not seen anyone operate a vehicle all the way through the road. He further testified that although several people have been directed by their global positioning system navigation devices to drive up the road from section four, those people "turn right around" because "[t]hey can't get through."

Collectively, this evidence supports the conclusion that the disputed sections are not part of a highway. The court found that by the time the action was commenced, at least twenty-five years had passed since the unorganized public last used the challenged sections of the road as a highway. For as long, the town refused to acknowledge those sections as part of the road and did not develop or maintain them; at trial, representatives from the town testified that it has no plans to do so in the future. On this evidence, under the specific facts and circumstances of this case, a sufficiently long period of wilful nonuse has passed to imply intent to abandon.

To the extent that the plaintiffs presented evidence and their witnesses testified to the contrary; see, e.g., footnote 10 of this opinion; we emphasize that "[e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The trier of fact] is free to juxtapose conflicting versions of events and determine which is more credible. . . . In this regard, [w]e are not in a position to question the court's credibility finding. The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Benjamin* v. *Norwalk*, supra, 170 Conn. App. 25.

We note again that, in addition to weighing all the evidence and testimony carefully, the court personally visited the road and drove and walked its entire length. That kind of observation demonstrates exactly why this court cannot relitigate the facts. See, e.g., *Hensley* v. *Commissioner of Transportation*, 211 Conn. 173, 178 n.3, 558 A.2d 971 (1989) ("[w]e have consistently held that the visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his consideration by the witnesses under oath" [internal quotation marks omitted]); C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 11.9.1, p. 730 ("[A] court has discretion to permit the [fact finder], be it court or jury, to view the premises or a location relevant to the trial. . . . Evidence obtained from views is substantive evidence and can independently support a factual finding. . . . The fact that *such evidence is unreviewable on appeal* in no way impairs its admissibility." [Citations omitted; emphasis added.])

Because we defer to the trial court's weighing of the facts, and because nothing in this record suggests that the court misapplied the law, we conclude that the finding of abandonment was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The six plaintiffs in this action, Christopher Houk Nichols, Frank Samuelson, Robert Samuelson, Larissa Nichols, Richard Barlow and Judy Barlow, all own or reside on properties that are located on or near Old Good Hill Road in Oxford.

[2] General Statutes § 13a-103 provides, in relevant part: "Whenever any town fails to keep any highway within such town in good and sufficient repair or whenever the selectmen of any town fail . . . to make such alterations or improvements therein as may be required by common convenience or necessity, the superior court for the judicial district in which such highway is located, upon the written complaint of six or more citizens of this state under oath, after due inquiry made by it, shall appoint a time and place when and where all persons interested may appear and be heard upon the propriety of such repairs . . . or of the making of such alterations and improvements. . . . If the court finds that such highway should be repaired . . . or that such alterations and improvements should be made, it shall order the selectmen of such town to cause such highway to be repaired . . . and such alterations and improvements to be made, and shall prescribe

the manner and extent of such repairs and of the removal of such encroachments and of the making of such alterations and improvements and the time within which the work shall be done, and may, for reasonable cause, extend such time."

[3] In addition to the town, the defendants were John Lucas, James H. Brewster, Robert H. Brewster, Kristine Fierrro, Diane Talbot, Laura Farkas, Linda Czaplinski, Robert Danieliki, Elena Saad, and Lenore Nolan, each of whom own property on the road and were made parties pursuant to the provisions of § 13a-103 because their interests may have been affected by the outcome of the action. Only John Lucas participated in the trial. We refer to the town and Lucas together as the defendants.

[4] The term "highway" refers to "[a] main road or thoroughfare; hence, a road or way open to the use of the public. . . . A highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle. . . . The essential feature of a highway is that it is a way over which the public at large has the right to pass. . . . Accordingly, the term highway is ordinarily used in contradistinction to a private way, over which only a limited number of persons have the right to pass. . . . The expression private highway is a misnomer and public highway is tautology." (Citations omitted; internal quotation marks omitted.) *Stavola* v. *Palmer*, 136 Conn. 670, 683–84, 73 A.2d 831 (1950). See also General Statues § 13a-1 (a) (2) ("'[h]ighway' includes streets and roads").

[5] As a result, we do not address the plaintiffs' claim that the court should have found that sections two, three and four of the road comprised part of the highway; to the extent that the challenged sections of the road had been dedicated and accepted, they since have been abandoned. This opinion, however, should not be read to suggest that the court's findings that the plaintiffs failed to prove both dedication and acceptance were erroneous.

[6] Accordingly, the defendants bore the burden of proving abandonment. See *Montanaro* v. *Aspetuck Land Trust, Inc.*, 137 Conn App. 1, 21, 48 A.3d 107, cert. denied, 307 Conn. 932, 56 A.3d 715 (2012) ("[t]he burden of proof is on him who seeks to establish the abandonment of a highway, and the continuance of the street will be presumed until satisfactory evidence is produced to rebut it" [internal quotation marks omitted]).

[7] "From early times, under the common law, highways have been established in this state by dedication and acceptance by the public. . . . Dedication is an appropriation of land to some public use, made by the owner of the fee, and accepted for such use by and in behalf of the public. . . . Both the owner's intention to dedicate the way to public use and acceptance by the public must exist, but the intention to dedicate the way to public use may be implied from the acts and conduct of the owner, and public acceptance may be shown by proof of the actual use of the way by the public. . . . Thus, two elements are essential to a valid dedication: (1) a manifested intent by the owner to dedicate the land involved for the use of the public; and (2) an acceptance by the proper authorities or by the general public." (Citation omitted; internal quotation marks omitted.) *Drabik* v. *East Lyme*, 234 Conn. 390, 394, 662 A.2d 118 (1995).

[8] "User" and "nonuser" are terms of art in early case law. See, e.g., *Beardslee* v. *French*, 7 Conn. 125, 127 (18 Am. Dec. 86) (1828). Where possible, we use the terms "use" and "nonuse" instead.

[9] We express no opinion as to the present owner of the fee, if any. See generally *American Trading Real Estate Properties, Inc.* v. *Trumbull*, supra, 215 Conn. 77–82; *Burke* v. *Ruggiero*, 24 Conn. App. 700, 707, 591 A.2d 453, cert. denied, 220 Conn. 903, 593 A.2d 967 (1991); R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 49:5, p. 113–14.

[10] In its thorough evaluation of all the evidence, the court noted that "[t]he plaintiffs' evidence provides some indicia of acceptance. The plaintiffs emphasize that [the road] has been long identified and recognized on deeds and maps, although the town emphasizes that these documents were not produced or created by the town. The earliest references to [the road] are in maps of [the town] dated 1852 and 1868. The plaintiffs identified town logs that were dated 1961 and 1962, indicating that the town did some reconstruction or improvement work on the road which may have included work on the unimproved sections of [the road]. The plaintiffs' evidence also reflects a 2006 easement granted by the town to Lucas for him to install a sanitary sewer line. . . . This easement is equivocal as to the issues of acceptance or ownership as it explicitly states that 'the town of Oxford does not make any representation as to what right it may have, if any, over this easement area.' Over the years, some of the property owners had conversations with town officials that indicated some town interest in or

responsibility for the property. For example, Lane testified that she had such communications with town officials, and Nichols received communications [from] the town's zoning enforcement official that his work on the road was being done on town property. The evidence also indicates that in the 1960s, the town's planning and zoning commission approved a subdivision development plan that was not completed. According to the plaintiffs, this approval required the commission to view the road as a public highway. See *Meshberg* v. *Bridgeport City Trust Co.*, [180 Conn. 274, 280, 429 A.2d 865 (1980)] (implied acceptance may not be established solely by approval of subdivision plans because approval of a proposed subdivision and the acceptance of a public street are entirely separate matters.) Additionally, there is no evidence that the areas of the road are taxed by the town. See [id., 284] (in evaluating acceptance '[t]he weight to be accorded the assessment or nonassessment of taxes upon property dedicated to a public use varies according to the other circumstances of the case')." (Citation omitted; footnote omitted.) Ultimately, the court, weighing these indicia of acceptance against the rest of the evidence, concluded that the plaintiffs had failed to prove both dedication and acceptance.

[11] Wayne Watt testified that he was the foreman/director of the town's public works department.

[12] We note that both Nichols and Watt also testified that Watt informed Nichols upon his purchase of the home that the disputed sections were not a "town approved road" and were not maintained.

[13] The plaintiff's expert conceded that, even in its heyday, section three may have been navigable only by "empty wagon."

_____