******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# PETER B. VIERING ET AL. *v.* THE GROTON LONG POINT ASSOCIATION, INC.
## (AC 45974)

Elgo, Clark and Sheldon, Js.

*Syllabus*

The plaintiffs, each an owner of real property in the Groton Long Point section of Groton and, as such, a member of the defendant association, sought, inter alia, a declaratory judgment that they had the right to use certain rights-of-way owned by the defendant that abutted their respective properties to the exclusion of all other members of the defendant and the general public. The two rights-of-way at issue were five foot wide strips of land running through a tract of land that was bounded by a road in the northeast and by a beach along Long Island Sound in the southwest. The entire tract was originally owned by G Co., which subdivided the land, separately deeded the plaintiffs' properties to their predecessors in title and deeded to the defendant certain common area tracts and all of its rights, title, and interest to the shore, roads, and rights-of-way in Groton Long Point. The plaintiffs each owned one or more road front or beachfront properties in the tract, the deeds to which indicated that each such property was bounded by the right-of-way it abutted. In 1999 and 2000, one of the plaintiffs sent letters to the defendant's board of directors, urging them to recognize that the rights-of-way were not to be used by the public or residents of Groton Long Point at large but, instead, were intended only to provide limited rights-of-way dedicated to the lots they abutted. A few years later, the defendant sent letters to the residents of Groton Long Point, asserting ownership of the rights-of-way and instructing adjacent property owners who had encroached on the rights-of-way to remove any impediments that were obstructing access. For many years, both before and after these letters were sent, the rights-of-way were covered with vegetation. In May, 2019, the defendant sent letters to the plaintiffs informing them that they were going to remove bushes and other impediments from the rights-of-way. Shortly thereafter, unnamed individuals began to clear the vegetation. In June, 2019, the plaintiffs commenced the present action, claiming that they had acquired title to the rights-of-way through either adverse possession or abandonment or, alternatively, that they possessed exclusive access easements over the rights-of-way or had acquired prescriptive easements over them. They sought a declaratory judgment that they had the right to use the right-of-way that abutted their respective properties to the exclusion of all others and a temporary and permanent injunction prohibiting the defendant from clearing the rights-of-way of any vegetation or taking any other action that would open access to the rights-of-way. The parties filed motions for summary judgment. The trial court granted the defendant's motion and denied the plaintiffs' motion. On the plaintiffs' appeal to this court, *held*:

1. The trial court did not err in granting summary judgment for the defendant on the plaintiffs' claim that they possessed exclusive abutters' access easements over the rights-of-way: contrary to the plaintiffs' assertions, the trial court could not be faulted for considering their claims for abutters' access easements over the rights-of-way under principles of law applicable to claims of easements by necessity rather than claims of easements by implication because the plaintiffs expressly relied on principles of law applicable to easements by necessity when making their arguments; moreover, the plaintiffs acknowledged that the deeds to their properties did not expressly grant them an exclusive access easement over the rights-of-way, and, at most, the language in the deeds indicating that the properties were bounded by the rights-of-way and the maps cited in those deeds depicting the rights-of-way demonstrated that G Co. had intended to grant access easements over the rights-of-way to the abutting property owners; furthermore, the evidence did not establish that, by creating a limited number of access easements over the rights-of-way, G Co. was surrendering its rights, or the rights of the defendant as its successor in title, to make other further uses of that

property, including the granting of easements over the rights-of-way to others, as long as those uses did not unreasonably interfere with the plaintiffs' established rights to use the property, and the plaintiffs did not submit any evidence demonstrating that the defendant's use of the rights-of-way would unreasonably interfere with the plaintiffs' enjoyment of them as a means of ingress and egress to and from their own properties; additionally, contrary to the plaintiffs' claims, it would have been improper for the trial court to consider extrinsic evidence that allegedly made clear G Co.'s intent that the rights-of-way were to be used exclusively by the abutting property owners because the language of the deeds was not ambiguous with respect to whether the access easements were intended to confer an exclusive right to use the rights-of-way, as they contained no language expressly creating any easement or suggesting or implying that the access easements were granted with such an intent.

2. The trial court correctly determined that the defendant was entitled to summary judgment on the plaintiffs' claims of adverse possession and prescriptive easement due to the lack of sufficient evidence to raise a genuine issue of material fact that the plaintiffs had made open, visible, and hostile use of the rights-of-way for a continuous period of fifteen years: although a party's maintenance of a disputed area, including planting and maintaining vegetation, could demonstrate an open and visible use of that area, the plaintiffs did not plant any of the vegetation on the rights-of-way, which they characterized as "wild growth," and they did not submit any evidence that they maintained the vegetation in a visible and apparent manner; moreover, given that the plaintiffs were permitted to use the rights-of-way as a means of access, their alleged maintenance could have been viewed as consistent with their permitted use and was not sufficiently hostile to meet the law's requirements; furthermore, although the plaintiffs submitted some evidence as to other uses of certain portions of the rights-of-way, including to congregate occasionally, to park a boat trailer, to house a grill, and to extend their decking, they did not rely on such evidence in support of their argument that they had made open, visible, and hostile use of the rights-of-way, and such evidence did not raise a genuine issue of material fact as to whether the plaintiffs had openly and visibly used the rights-of-way for a continuous period of fifteen years.

3. The trial court did not improperly fail to address the plaintiffs' claim that the defendant had abandoned the rights-of-way: although the trial court did not address the plaintiffs' claim of abandonment as a separate cause of action, it recognized that the plaintiffs had raised the claim and addressed the issue in the context of the defendant's municipal immunity defense to the plaintiffs' claims of adverse possession; moreover, the plaintiffs did not provide any support for the proposition that they could have obtained ownership of the rights-of-way on the basis of the defendant's alleged abandonment of that property without also proving the elements of adverse possession; accordingly, there was no need for the trial court to address the issue of abandonment as a separate cause of action because it was inextricably intertwined with the plaintiffs' adverse possession claim.

Argued September 20, 2023—officially released February 27, 2024

*Procedural History*

Action seeking, inter alia, a declaratory judgment of adverse possession over certain of the defendant's real property, and for other relief, brought to the Superior Court in the judicial district of New London, where the defendant filed counterclaims; thereafter, the court, *Jacobs, J.*, granted the defendant's motion for summary judgment, denied the plaintiffs' motion for summary judgment, and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed*.

*Gerald T. Giaimo*, with whom were *Hugh I. Manke* and, on the brief, *Adam B. Marks*, for the appellants (plaintiffs).

*Joseph P. Williams*, with whom were *Chelsea McCallum* and, on the brief, *Sarah E. Dlugoszewski*, for the appellee (defendant).

*Opinion*

SHELDON, J. The present case arises from a dispute between the plaintiffs, Peter B. Viering, Russell W. Viering, Jr., Christine Carr, Jane M. Battles, Thomas E. Kingston, Jr., and Bobbye Lou Sims, and the defendant, The Groton Long Point Association, Inc., concerning the plaintiffs' claimed right to make exclusive use of two strips of land denominated as rights-of-way on land owned by the defendant that abuts the plaintiffs' residential properties in the Groton Long Point section of Groton. The plaintiffs appeal from the judgment rendered against them by the trial court on the granting of a motion for summary judgment filed by the defendant and the denial of the plaintiffs' own motion for summary judgment.[1] On appeal, the plaintiffs claim that the court erred in its summary judgment rulings by (1) failing to consider whether access easements over the two rights-of-way had been granted to them by deed, and thereby conferred on them the right to use such rights-of-way to the exclusion of all others, and failing in so ruling to consider certain extrinsic evidence allegedly relevant to that claim; (2) concluding that the defendant was entitled to judgment as a matter of law on the plaintiffs' claim that they had acquired the rights-of-way by adverse possession or, alternatively, that they had acquired prescriptive easements over the rights-of-way; and (3) failing to address their claim that the defendant had abandoned the rights-of-way. We affirm the judgment of the court.

The record reveals the following undisputed facts and procedural history. The rights-of-way at issue are two five foot wide strips of land that run north to south through a tract of land in Groton Long Point, lying between West Shore Avenue on the north and a beach along Long Island Sound on the south. In this tract, each of the plaintiffs owns one or more road front or beachfront properties, each of which abuts one of the rights-of-way, which the parties and the court refer to by their relative locations in the tract as the west right-of-way and the east right-of-way. Specifically, Peter Viering and Russell Viering, Jr. (collectively, Vierings), own four contiguous lots—shorefront lots 327 and 328 and road front lots 343 and 344 to their immediate north—which together abut the west right-of-way on the east and the east right-of-way on the west; Carr owns shorefront lot 329 and road front lot 342 to its immediate north, which together abut the west right-of-way on the west; Battles owns shorefront lot 326, which abuts the east right-of-way on the east; and Kingston and Sims own roadfront lot 345, which abuts the Battles' property on the north and the east right-of-way on the east.

The plaintiffs' properties were separately deeded to their predecessors in title on divers dates in the 1920s by the Groton Long Point Land Company, Inc. (company),

which had owned and developed them as parts of the second of five subdivisions of the land now known as Groton Long Point. The deed to each such property indicates that it is "bounded" by the particular right-of-way it abuts.[2]

In 1931, the company, as "releasor," transferred to the defendant, a homeowners association to which the plaintiffs and all other owners of residential property in Groton Long Point belong, as "releasee," five specific common area tracts[3] within Groton Long Point and "all the right, title, interest, claim and demand whatsoever as it, the said releasor, has or ought to have in or to all of the shore, roads and rights of way located at Groton Long Point . . . as have not heretofore already been conveyed to this releasee by this [r]eleasor . . . ."

The plaintiffs obtained title to their respective properties on divers dates in the 1990s and 2000s.[4]

Between November, 1999, and March, 2000, Peter Viering sent a series of letters to the board of directors of the defendant, urging it to recognize that the rights-of-way abutting the plaintiffs' properties were not to be used by the public or residents of Groton Long Point at large, but instead were intended "only to provide limited rights of way dedicated to and reserved for the lots they abutted." In October, 2003, and January, 2004, the defendant sent letters to the residents of Groton Long Point, asserting ownership of the rights-of-way and instructing "adjacent property owners who have encroached upon the [rights-of-way] to please remove all hazardous impediments . . . that obstruct access" to them.

For many decades prior to the sending of those letters, and continuing through the present time, the rights-of-way have been covered with vegetation such as beach rose and bittersweet. At the end of May, 2019, the defendant sent letters to the plaintiffs informing them that it intended to "commence cleanup" on the rights-of-way by removing "bushes and other impediments" from them. Shortly thereafter, unnamed individuals began to clear vegetation from the west right-of-way.

In June, 2019, the plaintiffs commenced the present action against the defendant. In their first amended complaint, the plaintiffs alleged that they had acquired title to the rights-of-way through either adverse possession or abandonment, or, alternatively, that they possessed access easements over the rights-of-way for their exclusive use as abutting property owners or had acquired prescriptive easements over them. The plaintiffs sought the following relief: (1) a declaratory judgment that (a) the Vierings and Carr own the west right-of-way or have the right to use it to the exclusion of all other association members and the general public, and (b) the Vierings, Battles, Kingston, and Sims own

or have the right to use the east right-of-way to the exclusion of all other association members and the general public; and (2) a temporary and permanent injunction prohibiting the defendant "from commencing any activity to clear the west [right-of-way] and east [right-of-way] of their vegetation" or take "any other action that opens access to the west [right-of-way] and the east [right-of-way]."

The defendant thereafter filed an answer and special defenses,[5] alleging, inter alia, that it was a municipality that held the rights-of-way for public use and, therefore, that the rights-of-way were immune from claims of adverse possession and prescriptive easement.[6]

The parties subsequently filed motions for summary judgment as to each count of the plaintiffs' first amended complaint. The plaintiffs and the defendant submitted numerous affidavits, deeds, subdivision maps, photographs, and other exhibits in support of their respective positions on the motions for summary judgment.

On October 18, 2022, the court, *Jacobs, J.*, issued a memorandum of decision granting the defendant's motion for summary judgment and denying the plaintiffs' motion for summary judgment. Addressing the plaintiffs' claim of adverse possession, the court first concluded that the defendant was not entitled to summary judgment on the ground of municipal immunity because, although the defendant was a quasi-municipality,[7] there was a genuine issue of material fact as to whether it intended to abandon the rights-of-way.[8] Notwithstanding this ruling, the court went on to conclude that the adverse possession claim failed as a matter of law for two other reasons: first, there was no genuine issue of material fact that the plaintiffs' use of the disputed areas had not been open, visible, and hostile to the defendant, as required to establish adverse possession; and second, the plaintiffs' shared dominion over and use of the rights-of-way defeated the exclusivity element of that claim. Next, the court concluded that the plaintiffs' claim for access easements over the rights-of-way failed as a matter of law because the plaintiffs already had access to the rights-of-way as members of the defendant, and, therefore, they did not need easements by necessity to gain such access. Finally, as to the plaintiffs' claim for prescriptive easements over the rights-of-way, the court concluded that there was no genuine issue of material fact that the plaintiffs had not, for a continuous period of fifteen years, made open, visible, and hostile use of the rights-of-way under a claim of right. This appeal followed. Additional facts and procedural history will be provided as necessary.

Before turning to the plaintiffs' claims on appeal, we set forth the applicable standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well

established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts [that], under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact [that] will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the [defendant's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Day* v. *Seblatnigg*, 341 Conn. 815, 825, 268 A.3d 595 (2022).

I

The plaintiffs initially raise two issues related to their claim that they possessed abutters' access easements over the rights-of-way. First, they claim that the court improperly failed to consider whether such access easements were created by deed rather than by common-law necessity. Second, they claim that the court erred in failing to consider extrinsic evidence tending to show that the company's intent in creating the rights-of-way was to provide them for the exclusive use of abutting property owners. We disagree.

In the third count of the first amended complaint, the plaintiffs raised claims for "abutters' access easement[s]." The plaintiffs alleged that they "possess an access easement to the [rights-of-way]. . . . The company created the west [right-of-way] and the east [right-of-way] to solve the access problem for lots 329, 328, 327, and 326 rather than leave those lots to common-law claims of easements by necessity over the roadside lots long before the association was created. . . . It was the narrow intent of the company for the west [right-of-way] and the east [right-of-way] to provide access to West Shore Road for lots 329, 328, 327, and 326, not to provide access from West Shore Road to the beach. . . . *The company intended for the west [right-of-way] and the east [right-of-way] to be used exclusively by the abutting plaintiffs, not by the association as a whole. . . . The west [right-of-way] and the east [right-of-way] were created by the company for the benefit of the plaintiff abutting owners only.*" (Emphasis added.) The plaintiffs submitted evidence to the court related to that claim, including copies of the deeds to their properties, the defendant's deed to the rights-of-way, certain other property owners' deeds,

and various maps of Groton Long Point, including the 1924 map depicting the "compiled plan showing all subdivisions made by the [company]" and the map depicting the second subdivision of the land.

In their memorandum of law in opposition to the defendant's motion for summary judgment, and in their memorandum of law in support of their own motion for summary judgment, the plaintiffs elaborated on their claim that "[t]he [rights-of-way] are access easements derived from the plaintiffs' deeds." Specifically, they argued that easements may be implied from deed descriptions and that "[e]ach plaintiff's deed specifically references a [right-of-way] as a boundary which gives rise to an access easement over the [right-of-way] for the benefit of their lot." In addition, they argued that the language in the deed to the defendant conveying the rights-of-way "as have not heretofore already been conveyed" demonstrated that the company had transferred title to the rights-of-way subject to the easement rights of the plaintiffs.

The plaintiffs further contended that "[t]he [rights-of-way] are not only beneficial, but are necessary, to the plaintiffs' use of their properties," as certain lots are landlocked and the rights-of-way "were created to solve these access problems" by providing access to West Shore Avenue. Thereafter they claimed, without recitation of supporting authority: "It so follows that the *principles of an easement by necessity apply to the* [*rights-of-way*], *namely the exclusive rights of the abutters, as sole beneficiaries, to use them.*" (Emphasis added.) On that conclusory basis, the plaintiffs argued that, "[e]ven though the exclusive nature of the [rights-of-way] was not articulated in the deed[s], their purpose of solving the access problem for lots 326, 327, 328, and 329 makes them *easements by implication with characteristics of easements by necessity.*" (Emphasis added.) At the hearing on the parties' motions, the plaintiffs continued to rely on evidence of the language in the deeds and the subdivision maps to argue that they had been conveyed "implied easement[s]" over the rights-of-way and that there was "simply no evidence in the actual deeds and maps of any intent for these rights-of-way to be used by anyone except for the plaintiff abutters."

In its memorandum of decision, the court agreed with the plaintiffs that the rights-of-way "were established and referenced in the deeds to the lots abutting them, affording the owners of the shorefront lots access to [West] Shore Avenue." On that basis, it accepted as "undisputed" the fact that when the defendant acquired title in fee simple to the rights-of-way in 1931, it did so "subject to the rights of the abutting property owners."

Thereafter, however, instead of inquiring as to what implied rights the plaintiffs were entitled to exercise with respect to the rights-of-way under the provisions

of their deeds, the court refocused its attention on the plaintiffs' supporting argument that the abutters' access easements they sought to enforce were akin to easements by necessity, which a claimant must show to be reasonably necessary to the enjoyment of his or her property. See *Francini* v. *Goodspeed Airport, LLC*, 327 Conn. 431, 438–39, 174 A.3d 779 (2018). In the end, the court rejected the plaintiffs' abutters' access easement claims on the ground that, in the plaintiffs' circumstances, abutters' access easements were not reasonably necessary to the enjoyment of their properties because such properties were bounded by the rights-of-way and they had the right to use such rights-of-way to access their properties as members of the defendant association. The plaintiffs did not file a motion for reargument or reconsideration on this issue, nor did they seek an articulation of the relevant portion of the court's decision.[9]

On appeal, the plaintiffs claim that the court improperly failed to consider whether access easements over the rights-of-way were created by their individual deeds, arguing that "the memorandum of decision characterizes the claim as simply one for easement by necessity and applies the very common law that the plaintiffs allege the company designed the [rights-of-way] to avoid." The plaintiffs also argue that the court failed to consider evidence of the company's intent with respect to the use of the rights-of-way. Specifically, they contend that the court "did not undertake a meaningful analysis of the deeds to the abutting properties and the deed to the defendant," "appears in its decision not to have analyzed or considered [the] map [of the 1924 Groton Long Point Compiled Plan showing all subdivisions made by the company] or other maps intended to aid in the construction of the deeds, particularly Subdivision Plan 2, which is the map depicting the [rights-of-way] referenced in the plaintiffs' deeds," and "ignored" certain other "deeds that reference the other rights-of-way within Groton Long Point that are not at issue but inform the intent of the [company]."

We observe at the outset that, although the plaintiffs criticize the court's consideration of their claims for abutters' access easements over the rights-of-way under principles of law applicable to claims of easement by necessity rather than claims of easements by implication, the plaintiffs themselves are largely responsible for the focus of the court's analysis because they expressly relied on principles of law applicable to easements by necessity when making their arguments for abutters' access easements. The plaintiffs' later failure to request reargument on those claims after the court issued its memorandum of decision denying them, moreover, naturally confirmed for the court that its characterization of those claims and resulting analytical approach to deciding them were responsive to the plaintiffs' claims. To the extent that the plaintiffs are responsible for

recharacterizing their abutters' access easement claims as claims for easements by necessity, the court cannot be faulted for deciding them on that basis.

If, however, and to the extent that the plaintiffs' invocation of necessity principles in arguing their abutters' access easement claims cannot reasonably be understood to have transmuted those claims from claims of easement by implication to claims of easement by necessity, the record before us makes it clear that the court did not decide those claims as the plaintiffs pleaded them.[10] Even so, it must be acknowledged that, although the court expressly found that the plaintiffs had impliedly acquired easement rights with respect to the rights-of-way under the provisions of their deeds, the court never decided whether such rights included the right to use the rights-of-way to the exclusion of all other members of the defendant association and the general public. The question presented by this omission from the court's decision is whether its failure to analyze the claims in that manner, if erroneous, had a material impact on the court's granting of summary judgment for the defendant on those claims. The issue presented, more particularly, is whether the evidence presented in the defendant's summary judgment motion raised a genuine issue of material fact not only as to whether the plaintiffs' deeds created easements by implication over the rights-of-way, but whether such easements gave the plaintiffs the right to use the rights-of-way to the exclusion of all others, including other members of the defendant association and the general public. Although the court, as the plaintiffs have argued, did not decide this claim explicitly, we can decide the merits of the claim in this context because it presents a question of law based on undisputed facts of record that is subject to our plenary review.[11] See *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 684, 911 A.2d 300 (2006) ("[w]hen an issue is raised in the trial court but the court declines to address it, an appellate court may consider it if the facts are undisputed and the issue is purely a question of law").

At the outset, we set forth the following legal principles governing easements. "[T]he benefit of an easement . . . is considered a nonpossessory interest in land because it generally authorizes limited uses of the burdened property for a particular purpose. . . . [E]asements are not ownership interests but rather privileges to use [the] land of another in [a] certain manner for [a] certain purpose . . . . Except as limited by the terms of the servitude . . . the holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. . . . Likewise, [e]*xcept as limited by the terms of the servitude . . . the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude.* . . . [T]he owner of

an easement has all rights incident or necessary to its proper enjoyment, [although] nothing more." (Citation omitted; emphasis added; internal quotation marks omitted.) *Williams* v. *Green Power Ventures, LLC*, 221 Conn. App. 657, 669–70, 303 A.3d 13 (2023), cert. denied, 348 Conn. 938, 307 A.3d 273 (2024).

It is undisputed that the defendant acquired from the company fee simple title to the rights-of-way, albeit subject to the rights that the company previously had conveyed by deed to the plaintiffs' predecessors in title. Generally speaking, the defendant thereby became entitled, as the new owner by deed of the servient estate, to make any use of the servient estate, including the two rights-of-way, that did not unreasonably interfere with the plaintiffs' use and enjoyment of their easements. See id., 670.

The question on this aspect of the plaintiffs' motion thus becomes whether the easements by implication previously conveyed by the company to the plaintiffs' predecessors in title over the defendant's property in their deeds granted them such exclusive access to and rights to use the rights-of-way as to disallow the defendant, as their fee simple owner, from making or authorizing others to make any other use of the rights-of-way.

"In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the obvious purpose the parties had in view. . . . Furthermore, [a] reference to [a] map in [a] deed, [f]or a more particular description, incorporates [the map] into the deed as fully and effectually as if copied therein. . . . [T]he identifying or explanatory features contained in maps referred to in a deed become part of the deed, and so are entitled to consideration in interpreting the deed as though they were expressly recited therein." (Internal quotation marks omitted.) *Rocamora* v. *Heaney*, 144 Conn. App. 658, 665–66, 74 A.3d 457 (2013).

The plaintiffs acknowledge that the deeds to their properties do not expressly grant them an exclusive access easement over the rights-of-way. Nevertheless, they contend that an access easement may be implied by virtue of the language in the deeds to their properties indicating that the properties are bounded by the particular rights-of-way they abut. They argue that the rights-of-way were created "solely for the benefit of abutting properties" and, thus, for their exclusive use, as evidenced by the map of the second subdivision plan referenced in their deeds, which depicts rights-of-way only in the area of their properties where there are shorefront lots without frontage on any road. They further argue that the 1924 map depicting the compiled plan showing all subdivisions made by the company, as referenced in the deed to the defendant, demonstrates that

members of the defendant have access to the beach by way of other entrances, separate from the rights-of-way.

Even viewing this evidence in the light most favorable to the plaintiffs, however, the language in the deeds to the plaintiffs' properties indicating that they are "bounded" by the rights-of-way and the cited maps depicting those rights-of-way demonstrate, at most, that the company did indeed intend to grant access easements over the rights-of-way to and for the benefit of the abutting property owners. See *Buckley* v. *Maxson*, 120 Conn. 511, 518, 181 A. 922 (1935); see also J. Bruce & J. Ely, Law of Easements and Licenses in Land (2023) § 4.30. Such easements would provide the plaintiffs, as the abutting property owners, a "right of ingress, egress, and regress . . . ." (Internal quotation marks omitted.) *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, 250 Conn. 135, 142, 735 A.2d 798 (1999).

The evidence does not tend to establish, however, and it does not legally follow, that by creating a limited number of access easements over the rights-of-way for use by the owners of abutting properties under their deeds, the owner of the rights-of-way was surrendering its rights, or the rights of its successors-in-title, to make any other or further uses of the rights-of-way, including the granting of easement rights over them to others, except to the limited extent that such further uses might unreasonably interfere with other easement holders' established rights to use the property. See *Williams* v. *Green Power Ventures, LLC*, supra, 221 Conn. App. 670 ("[t]he owner of an easement has all rights incident or necessary to its proper enjoyment, [*although*] *nothing more*" (emphasis added; internal quotation marks omitted)). As previously noted, the defendant, as the fee simple owner of the land subject to an easement, is entitled to make any use of its servient estate that does not unreasonably interfere with the plaintiffs' enjoyment of their rights to use the estate under their easements. See id. The plaintiffs do not explain how exclusive use of the rights-of-way would be " 'incident or necessary to [their] proper enjoyment' " of their land, as facilitated under their deeds by their access easements over the rights-of-way across the defendant's adjacent land, nor have they claimed or submitted any evidence to demonstrate that the defendant's use of the rights-of-way by clearing vegetation from them—or ultimately by permitting other members of the defendant association to use them as a means of access between the beach and West Shore Avenue—would " 'unreasonably interfere' " with their own enjoyment of the rights-of-way as a means of ingress and egress to and from their own properties. Id. In short, the record before us lends no support at all to the plaintiffs' claim that their easements by implication over the two rights-of-way granted them exclusive access to the rights-of-way as they have claimed.

The plaintiffs also argue that they submitted to the court certain extrinsic evidence that "makes clear" that the company intended the rights-of-way to be used exclusively by abutting property owners. That evidence includes deeds to other properties in Groton Long Point that abut rights-of-way not at issue in this case, deeds to other properties in Groton Long Point that do not abut any rights-of-way at all, and certain maps of Groton Long Point that are referenced in such deeds. "[I]f the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity." (Internal quotation marks omitted.) *NPC Offices, LLC* v. *Kowaleski*, 320 Conn. 519, 526, 131 A.3d 1144 (2016). If, by contrast, the language contained in a deed or conveyance is clear, the court is bound by such language and, thus, cannot properly consider extrinsic evidence to contradict it or alter its meaning. The deeds at issue in the present case are not ambiguous with respect to whether the access easements granted thereunder to the plaintiffs, as the owners of properties abutting rights-of-way across the defendant's property, were intended to confer on them the right to use such rights-of-way to the exclusion of all others, including other members of the defendant association or the general public. The plaintiffs themselves, who have conceded that the deeds contain no language expressly creating any easement, have pointed to no language in any of their deeds that suggests or implies that the access easements arising under them were granted with such an intent, and we have found none. See *Freidheim* v. *McLaughlin*, 217 Conn. App. 767, 788, 290 A.3d 801 (2023) (deed considered ambiguous where language was "susceptible to more than one reasonable interpretation"). In those circumstances, any consideration of the plaintiffs' extrinsic evidence as a possible basis for raising a genuine issue of material fact in support of their claimed right to make exclusive use of the rights-of-way over which they have been granted abutters' access easements under their deeds, and on that basis for denying the relevant portion of the defendant's motion for summary judgment, would be improper.[12] Because the clear language of the plaintiffs' deeds is not susceptible to a reasonable interpretation that their implied abutters' access easements over the defendant's rights-of-way give them any right to use such rights-of-way to the exclusion of all others, we affirm the court's granting of summary judgment in favor of the defendant on this issue.

II

The plaintiffs next claim that the court improperly rendered summary judgment in favor of the defendant on their claims of adverse possession and prescriptive easement. We disagree.

"The general legal principles governing adverse possession are well settled. When title is claimed by adverse possession, the burden of proof is on the claimant. . . . The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner." (Footnote omitted; internal quotation marks omitted.) *Dowling* v. *Heirs of Bond*, 345 Conn. 119, 143, 282 A.3d 1201 (2022).

The legal principles governing a claim for a prescriptive easement are similar, though not identical, to those governing claims of adverse possession. See *Smith* v. *Muellner*, 283 Conn. 510, 536–37, 932 A.2d 382 (2007). General Statutes § 47-37 provides: "No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years." "In applying that section, [our Supreme Court] repeatedly has explained that [a] party claiming to have acquired an easement by prescription must demonstrate that the use [of the property] has been open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." (Internal quotation marks omitted.) *Slack* v. *Greene*, 294 Conn. 418, 427, 984 A.2d 734 (2009).

In support of their motion for summary judgment, and in opposition to the defendant's motion for summary judgment, the plaintiffs submitted, among other things, an affidavit from Peter Viering, in which he attested that "[t]he [w]est [right-of-way] and [the] [e]ast [right-of-way] have been covered with wild growth including beach rose and bittersweet at all times for at least the past 60 years. . . . The [w]est [right-of-way] also houses two utility poles that provide utilities to the Viering Lots, which poles were erected more than fifty years ago. The [e]ast [right-of-way] houses a utility pole that provides utilities to Lot 345, owned by plaintiffs Kingston and Sims. . . . Because of the plant growth and utility poles, the [w]est [right-of-way] and [the] [e]ast [right-of-way] have never been used by anyone for foot passage from West Shore Avenue to [the] Boardwalk or from [the] Boardwalk to West Shore Avenue. Rather, the [rights-of-way] have been exclusively used for other purposes by the plaintiffs, their family and guests. . . . Rather, there is a lawn on the Viering Lots to the east of the [w]est [right-of-way] and the west of the [e]ast [right-of-way] on which we have granted permission to certain [members of the defendant] to cross. . . . We have observed such [members of the defendant] crossing on the lawn of the Viering Lots, but we have never observed any non-abutter using the [rights-of-way] as the [rights-of-way] are in large part obstructed. . . . The obstructions of the beach rose

and bittersweet and utility poles are clearly visible both from West Shore Avenue as well as the Boardwalk. . . . The abutters of the [rights-of-way] have at all times maintained the [rights-of-way], and at no time has the [defendant] done anything to maintain the [rights-of-way]." Peter Viering's interrogatory responses reflected that, as far as maintaining the rights-of-way, the plaintiffs "collectively prune, trim and/or otherwise maintain the vegetation on the west [right-of-way] and the east [right-of-way] that is adjacent to their property and/or also remove poison ivy," and that he personally mowed or arranged for the mowing of portions of the west right-of-way and east right-of-way approximately weekly from May to October each year.

In addition, the plaintiffs submitted affidavits from Kingston and Sims, who attested that "[t]he majority of the [e]ast [right-of-way] adjacent to our property is covered in vegetation, making it impassable. . . . We now weed the [e]ast [right-of-way] to maintain the vegetation growing thereon. . . . Additionally, the [e]ast [right-of-way] houses a telephone pole, which further makes use of [it] for purposes of passage impossible." (Citations omitted.) The plaintiffs also submitted photographs depicting the appearance of the vegetation on the rights-of-way.

As to the evidence of other ways in which the plaintiffs used the rights-of-way, Peter Viering's interrogatory responses indicated that he has "occasionally used a portion of the west [right-of-way] to congregate with friends and family. The west [right-of-way] is also used as a staging area for contractors performing home improvement projects on [his] behalf . . . . The west [right-of-way] also provides utility service to [his] property." In Kingston's and Sims' affidavits, they attested that "the portion [of the east right-of-way] closest to the road . . . is used as our side yard. Over the years, we have parked our boat trailer there, used it to house our grill, and, for a period of multiple years, we had decking extending from our currently existing deck onto the [e]ast [right-of-way]. More recently, we hired a landscaping company to place some large walkstones in the [e]ast [right-of-way] to allow for beach access from our property." The plaintiffs submitted photographs of the grill and the recently laid stepping stones.

In its memorandum of decision, the court first addressed the plaintiffs' claim for adverse possession. The court concluded that "there are genuine issues of material fact as to whether the defendant is immune to the claim for adverse possession,"[13] as a result of the conflicting evidence regarding whether the defendant had intended to abandon the rights-of-way,[14] but that "[t]he same cannot be said for the claim for adverse possession itself."

The court explained this conclusion as follows: "The very nature of the rights-of-way defeats the claim for

adverse possession. They are strips of land owned in fee by the defendant, which the plaintiffs have at all relevant times had the right to use. As the plaintiffs' use of the rights-of-way has at all relevant times been permitted, there is no genuine issue of fact as to whether that use has been hostile to the ownership right of the defendant. By the same token, the mere fact that the rights-of-way had over the course of decades become overgrown, while reflective of the [defendant's] use— or disuse, as it were—of the rights-of-way during that time is in no way reflective of the plaintiffs' use of the rights-of-way during that time, let alone probative of their ouster of the defendant from those strips of land. Furthermore, even assuming, arguendo, that there is a genuine issue of material fact as to the plaintiffs' open, visible, and hostile possession of the rights-of-way, the element of exclusive use fails as a matter of law where each of the plaintiffs claim to have used the rights-of-way as their own. As the court in *Roberson* v. *Aubin*, [120 Conn. App. 72, 76, 990 A.2d 1239 (2010)] wrote: '[S]hared dominion [over property] defeats a claim of adverse possession . . . .' "

As to the plaintiffs' claim for a prescriptive easement, the court concluded: "Here, there is no dispute about the use or disuse, as it were, of the rights-of-way over the course of many decades. Significantly, the plaintiffs have failed to submit proof of any kind as would demonstrate that they had for a continuous period of fifteen years openly and visibly used the rights-of-way under a claim of right. To the contrary, the undisputed fact is that over time the rights-of-way became impassible by reason of the overgrowth. Ironically, it was the threat to remove the overgrowth and make the rights-of-way again passable—and usable by the greater populace of Groton Long Point and their guests—which prompted the filing of this lawsuit."

On appeal, the plaintiffs claim that the court improperly concluded that there was no genuine issue of material fact that the plaintiffs had not openly and visibly used the rights-of-way in a hostile manner for a continuous period of fifteen years. Specifically, they argue that they presented evidence regarding their maintenance of the vegetation, the Vierings' use of the west right-of-way to congregate with friends and family, and Sims' and Kingston's use of the east right-of-way to park their boat trailer and house their grill, and, for multiple summers, to have a deck extending into the east right-of-way.[15] They contend that such evidence is "more than sufficient for the court to determine that the plaintiffs openly and visibly used the [rights-of-way] for a continuous period of fifteen years, and the [court] erred in its conclusion to the contrary."[16] In addition, they argue that the court erred in its analysis of hostility because "[t]here was never a consensual relationship between the defendant and the plaintiffs," as "[t]he rights of the plaintiffs derived by deed from the company, not the

defendant," and the court failed to analyze whether the allegedly permitted use had become hostile. We disagree.

As previously indicated, both adverse possession and prescriptive easement require open and visible use for a continuous period of fifteen years. See *Dowling* v. *Heirs of Bond*, supra, 345 Conn. 143; *Slack* v. *Greene*, supra, 294 Conn. 427. The purpose of the open and visible use requirement is to give the owner of the servient land, in a claim for a prescriptive easement, "knowledge and full opportunity to assert his own rights. . . . To satisfy this requirement, the adverse use must be made in such a way that a reasonably diligent owner would learn of its existence, nature, and extent. Open generally means that the use is not made in secret or stealthily. It may also mean that it is visible or apparent. . . . An openly visible and apparent use satisfies the requirement even if the neighbors have no actual knowledge of it. A use that is not open but is so widely known in the community that the owner should be aware of it also satisfies the requirement. . . . Concealed . . . usage cannot serve as the basis [for] a prescriptive claim because it does not put the landowner on notice." (Internal quotation marks omitted.) *Slack* v. *Greene*, supra, 427–28. Similarly, with respect to a claim of adverse possession, "[t]he open and visible element requires a fact finder to examine the extent and visibility of the claimant's use of the record owner's property so as to determine whether a reasonable owner would believe that the claimant was using that property as his or her own." (Internal quotation marks omitted.) *Padula* v. *Arborio*, 219 Conn. App. 432, 447, 296 A.3d 276, cert. denied, 348 Conn. 903, 301 A.3d 528 (2023).

In addition, a party asserting a claim of adverse possession of land, or a claim for a prescriptive easement over such land, must establish that his use of the land is hostile or adverse to the title of the record owner. See id., 446–48; see also *Blow* v. *Konetchy*, 107 Conn. App. 777, 783 n.7, 946 A.2d 943 (2008) ("[t]o establish an easement by prescription it is absolutely essential that the use be adverse" (internal quotation marks omitted)). "Hostile possession can be understood as possession that is opposed and antagonistic to all other claims, and that conveys the clear message that the possessor intends to possess the land as his or her own." (Internal quotation marks omitted.) *Mulle* v. *McCauley*, 102 Conn. App. 803, 814, 927 A.2d 921, cert. denied, 284 Conn. 907, 931 A.2d 265 (2007). Permission to use the disputed area defeats the element of hostility. See *Dowling* v. *Heirs of Bond*, supra, 345 Conn. 146 ("use of the land by the express or implied permission by the true owner is not adverse and, therefore, cannot ripen into adverse possession" (internal quotation marks omitted)); *Woodhouse* v. *McKee*, 90 Conn. App. 662, 672, 879 A.2d 486 (2005) (hostility "is the absence of consent, license or

permission to use the disputed area"). Nevertheless, "[p]ossession that is permissive in its inception may become hostile"; (internal quotation marks omitted) *Woodhouse* v. *McKee*, supra, 675; if the claimants use the disputed area for purposes for which they do not have permission. *Dowling* v. *Heirs of Bond*, supra, 147–51.

This court previously has held, as the plaintiffs argue, that a party's maintenance of a disputed area, including planting and maintaining vegetation, may demonstrate an open and visible use of that area. See, e.g., *Padula* v. *Arborio*, supra, 219 Conn. App. 460 (plaintiffs removed soil and grass, installed sprinkler system, laid down new sod, dug out old tree and planted new trees, and replaced fence, among other things, in disputed area); *98 Lords Highway, LLC* v. *One Hundred Lords Highway, LLC*, 138 Conn. App. 776, 811, 54 A.3d 232 (2012) (party made permanent improvements on land, including cleaning area of underbrush, cutting some trees down, planting lawn, trees, and garden, and installing fence in disputed area); *Eberhart* v. *Meadow Haven, Inc.*, 111 Conn. App. 636, 642, 960 A.2d 1083 (2008) (plaintiffs planted and maintained hedges and trees and maintained lawn, among other things, in disputed area); *Schlichting* v. *Cotter*, 109 Conn. App. 361, 367–69, 952 A.2d 73 (plaintiff pruned and removed trees, planted and maintained plants, removed poison ivy from trees and removed sumac from foliage, raked leaves, mowed, fertilized and maintained lawn, and planted, cultivated and maintained garden, among other things, in disputed area), cert. denied, 289 Conn. 944, 959 A.2d 1009 (2008).

Unlike in those cases, however, the plaintiffs in the present case did not themselves plant any of the vegetation, which they characterized as "wild growth," and they did not submit any evidence to demonstrate that they maintained the vegetation in a visible and apparent manner. Instead, the plaintiffs' own evidence tended to establish that the natural vegetation growth rendered the rights-of-way "in large part obstructed" and "impassable."[17]

Moreover, as the court determined, given that the plaintiffs were permitted to use the rights-of-way as a means of access—whether by deed or by virtue of being members of the defendant—their alleged maintenance of the rights-of-way could be viewed as consistent with their permitted use and, therefore, was not sufficiently hostile to meet the law's requirements. See *Smith* v. *Muellner*, supra, 283 Conn. 525 n.14 (dominant estate holder, as party benefitted by access easement, is responsible for maintaining easement and doing whatever is reasonably necessary to make it suitable and convenient for his use); see also *Dowling* v. *Heirs of Bond*, supra, 345 Conn. 148–51 (acts that are consistent with permission are not enough to prove notice of hostile claim).

Furthermore, although the plaintiffs submitted some evidence as to other uses of certain portions of the rights-of-way, such as the Vierings' use of the west right-of-way to congregate "occasionally" with family and friends, and Kingston's and Sims' use of the east right-of-way to extend their decking "for a period of multiple years" and to park their boat trailer and house their grill over the years, the plaintiffs did not rely on this evidence in support of their argument that they had made "open and visible" and hostile use of the rights-of-way.[18] Such evidence did not raise a genuine issue of material fact as to whether the plaintiffs had openly and visibly used the rights-of-way for a continuous period of fifteen years.

Accordingly, we conclude that the court correctly determined that the defendant was entitled to summary judgment on the plaintiffs' claims of adverse possession and prescriptive easement due to the lack of sufficient evidence to raise a genuine issue of material fact that the plaintiffs had made open, visible, and hostile use of the rights-of-way for a continuous period of fifteen years, as needed to overcome the defendant's motion for summary judgment.

III

The plaintiffs' final claim is that the court improperly failed to address their claim that the defendant abandoned the rights-of-way. We disagree.

The second count of the plaintiffs' first amended complaint set forth a claim of abandonment. The plaintiffs alleged that, "[s]ince 1931, the [defendant] has never asserted any rights, or taken any action to control or maintain the west [right-of-way] and the east [right-of-way]. . . . Since at least 1931, the west [right-of-way] and the east [right-of-way] have been controlled by the abutting plaintiffs without interference of the [defendant]. . . . The [defendant] intentionally abandoned the west [right-of-way] and the east [right-of-way]. . . . Because the west [right-of-way] and the east [right-of-way] were created for the exclusive purpose of providing access to the road from lots 329, 328, 327, and 326, the rights in the west [right-of-way] and the east [right-of-way] revert to the abutting plaintiffs. . . . The plaintiffs are entitled to a declaratory judgment concerning their legal right to the west [right-of-way] and the east [right-of-way]."

In its memorandum of decision, the court recognized that the plaintiffs had raised a claim of abandonment, but it did not address that claim as a separate cause of action. Instead, the court addressed the issue of abandonment in the context of the defendant's municipal immunity defense. Specifically, as previously explained, the court determined that a genuine issue of material fact existed as to whether the rights-of-way were immune from claims of adverse possession

because there was conflicting evidence regarding whether the defendant intended to abandon that property.

After the present appeal was filed, the plaintiffs filed a motion for articulation, asking the court to articulate the factual and legal bases for its decision on their claim that the defendant had abandoned the rights-of-way. In the motion, the plaintiffs argued that the court's memorandum of decision "references the plaintiffs' claim for abandonment in its recitation of the underlying facts and procedural history," but the court "did not address the legal arguments advanced by the parties either in support of or in opposition to the abandonment claim." The court denied the plaintiffs' motion for articulation. The plaintiffs did not file a motion for review of that ruling with this court pursuant to Practice Book § 66-7.

We conclude, consistent with the court's analysis, that the issue of whether the defendant abandoned the rights-of-way was relevant to the defendant's claim of municipal immunity from adverse possession. "Municipal immunity from adverse possession is the rule and not the exception, and we have consistently held that the party seeking to acquire title by adverse possession bears the burden of proving all the elements of adverse possession. . . . Public rights to municipal property will not be forfeited by lack of use *absent some additional evidence indicating that the municipality intended to abandon the property.*" (Citation omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Campanelli* v. *Candlewood Hills Tax District*, 126 Conn. App. 135, 140, 10 A.3d 1073 (2011); see also, e.g., *American Trading Real Estate Properties, Inc.* v. *Trumbull*, 215 Conn. 68, 78–80, 574 A.2d 796 (1990) (addressing issue of abandonment in context of claim of municipal immunity from adverse possession); *Benjamin* v. *Norwalk*, 170 Conn. App. 1, 22, 153 A.3d 669 (2016) (same).

The plaintiffs cite no case law, and we have found none, to support the proposition that they could obtain ownership of the rights-of-way on the basis of the defendant's alleged abandonment of that property, without also proving the elements of adverse possession.[19] Because, in the context of the present case, the issue of abandonment was inextricably intertwined with the plaintiffs' adverse possession claim, there was no need for the court to address that issue as an independent cause of action. Accordingly, we conclude that the court did not improperly fail to address the issue of abandonment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the appeal form filed by the plaintiffs indicates that they are appealing from the court's denial of their motion for summary judgment in addition to the court's granting of the defendant's motion for summary

judgment, and they mention their motion in their briefing to this court, they also acknowledge that "the issues in the cross motions for summary judgment were identical," and they do not separately brief any issue related to their motion. Accordingly, we do not independently address the court's denial of the plaintiffs' motion for summary judgment.

[2] Carr's deed does not specifically describe the property as being "bounded" by a right-of-way but does state that "a five (5) foot wide strip . . . [is] set forth in a survey map . . . ."

[3] These five specific common area tracts are separate parcels of land that are not at issue in the present case.

[4] The Vierings have owned their property since 2003, and it has been in their family since the 1920s; Carr has owned her property since 1996; Battles has owned her property since 2006; and Kingston and Sims have owned their property since 2002.

[5] The defendant also filed a counterclaim seeking to quiet title with respect to the rights-of-way and alleging trespass as to all of the plaintiffs. This counterclaim is not at issue in the present appeal.

[6] "Title to realty held in fee by a state or any of its subdivisions for a public use cannot be acquired by adverse possession." (Internal quotation marks omitted.) *Campanelli* v. *Candlewood Hills Tax District*, 126 Conn. App. 135, 140, 10 A.3d 1073 (2011). "[P]roperty that is held in fee simple ownership by municipalities must be presumed to be held for public use. It follows that the party seeking title by adverse possession must bear the burden of rebutting that presumption. Municipal immunity from adverse possession is the rule and not the exception, and we have consistently held that the party seeking to acquire title by adverse possession bears the burden of proving all the elements of adverse possession." (Internal quotation marks omitted.) *Benjamin* v. *Norwalk*, 170 Conn. App. 1, 18, 153 A.3d 669 (2016).

[7] The court explained that the defendant "is an entity, created in May, 1921, by special act of the General Assembly, and endowed, generally, with 'all the powers granted to boroughs under the general statutes,' " and "[t]he legislative charter declared that the [defendant] property owners 'are hereby constituted a body politic.' " Thus, the court concluded that "[t]he [defendant] is not just another property owner. If not a municipality per se, it has, by virtue of its legislative charter, all of the attributes of a municipality," and "[t]hat it does not serve the general welfare of the public at large does not defeat its quasi-municipal status (hence, the 'quasi')."

[8] A municipality's property may be considered abandoned when there is "(1) nonuse by the public (2) for a long period of time (3) with the intent to abandon," and "it has long been the rule that abandonment may be inferred from circumstances or may be presumed from long continued neglect." (Internal quotation marks omitted.) *Nichols* v. *Oxford*, 182 Conn. App. 674, 681, 191 A.3d 219, cert. denied, 330 Conn. 912, 193 A.3d 560 (2018).

[9] As we subsequently explain in part III of this opinion, the plaintiffs sought an articulation of the court's decision only as to their claim that the defendant had abandoned the rights-of-way.

[10] Our Supreme Court has explained that "the test for easements by implication and easements by necessity have been confused by both trial and appellate courts through the years. Although we agree that the line between the two kinds of implied easements has been blurred, the intent of the parties and the beneficial use of property are still key components of both types of easements. The distinction between the two arises from the way the intent is determined: by examination of the express terms of the deed in cases of easements by implication, and by examination of the presumed intent of the parties by the circumstances of the conveyance in cases of easements by necessity." *Francini* v. *Goodspeed Airport, LLC*, supra, 327 Conn. 445 n.8.

[11] Both parties fully briefed their respective positions on this issue.

[12] We also note that, to the extent the plaintiffs' claim relies on the examination of the presumed intent of the parties by the circumstances of the conveyance, rather than the examination of the express terms of the deeds at issue, such an analysis would support a claim for an easement by necessity, not a claim for an easement by implication. See *Francini* v. *Goodspeed Airport, LLC*, supra, 327 Conn. 445 n.8.

[13] On appeal, the plaintiffs claim that the court improperly determined that there was a genuine issue of material fact that existed with respect to the defendant's municipal immunity defense to adverse possession. Specifically, the plaintiffs claim that the defendant did not satisfy the "public use requirement," and, because the defendant does not hold the rights-of-way for public use, it is not entitled to the protection of municipal immunity as

a matter of law. The defendant responds that its defense of municipal immunity presents an alternative ground for affirming the judgment of the trial court on the adverse possession claim because the court found that it is a "quasi-municipal" entity, which results in a presumption that the rights-of-way are held for public use, and, in its view, the plaintiffs failed to rebut that presumption.

Although the parties have not raised the issue in their briefs to this court, there is some question as to whether the plaintiffs were aggrieved by this aspect of the trial court's decision, insofar as the court was declining to grant the defendant's motion for summary judgment on the basis of its municipal immunity defense, which was favorable to the plaintiffs; see *C. M.* v. *R. M.*, 219 Conn. App. 57, 66, 293 A.3d 968 (2023) ("the party claiming aggrievement must establish that [a] specific personal and legal interest has been specially and *injuriously affected* by the decision" (emphasis added; internal quotation marks omitted)); and the defendant did not file notice in this court that it intended to raise an alternative ground for affirmance pursuant to Practice Book § 84-11. Ultimately, however, we do not need to address this issue because, regardless of whether the rights-of-way were immune from a claim of adverse possession, the court properly determined that the plaintiffs' adverse possession claim failed as a matter of law, as we explain in part II of this opinion.

[14] Specifically, the court pointed to the evidence that the rights-of-way had become overgrown with vegetation and the defendant's October, 2003 and January, 2004 letters to the residents of Groton Long Point, reasserting their ownership of the rights-of-way and instructing abutting property owners to "remove all hazardous impediments . . . that obstruct access."

[15] The plaintiffs also suggest that the presence of utility poles in the disputed area, which provide electricity to the plaintiffs' homes, demonstrates their open and visible use of that area. At oral argument before this court, however, the plaintiffs' counsel acknowledged that any utility easement would belong to the utility company and that there was no evidence in the record as to who permitted the utility company to install the utility poles. Accordingly, the presence of utility poles does not demonstrate the plaintiffs' open and visible use of that area.

[16] The plaintiffs also claim that the court improperly determined that their shared dominion of the rights-of-way defeated the exclusivity element of adverse possession as a matter of law. Specifically, the plaintiffs argue that *Roberson* v. *Aubin*, supra, 120 Conn. App. 72, which the court relied on in reaching its conclusion, is inapposite because, in that case, the shared use was between the plaintiffs and the defendant, and, in the present case, "[t]he shared dominion argued by the defendant is among the plaintiffs themselves, not as among the plaintiffs and the defendant," which presents an issue of first impression.

Because we conclude that the court properly determined that the plaintiffs' adverse possession claim failed as a matter of law on the basis that there was no genuine issue of material fact as to whether the plaintiffs had used the rights-of-way in an open, visible and hostile manner for a continuous period of fifteen years, we do not reach this claim. See *Alvarez* v. *Middletown*, 192 Conn. App. 606, 611 n.2, 218 A.3d 124 ("[s]ummary judgment is appropriate where no genuine issue of material fact exists, and the defendant is entitled to judgment as a matter of law, *with respect to any one element that the plaintiff is required to prove in order to prevail at trial*" (emphasis added; internal quotation marks omitted)), cert. denied, 333 Conn. 936, 218 A.3d 594 (2019).

[17] On the basis of this evidence, we disagree with the plaintiffs' contention that the trial court's description of the vegetation as "overgrown" was a mischaracterization of the evidence.

[18] The plaintiffs relied only on the evidence of their maintenance of the vegetation and the presence of the utility poles to demonstrate their use of the rights-of-way.

In addition, although these other uses may be viewed as sufficiently hostile, because they exceed the permitted use of the rights-of-way as a means to access the road; see *Dowling* v. *Heirs of Bond*, supra, 345 Conn. 150–51; the plaintiffs have acknowledged in their reply brief to this court that they did not argue to the trial court that their use of the rights-of-way had become hostile.

[19] There are some circumstances in which an easement may be extinguished by the abandonment of the owner of the dominant estate, wherein the easement would cease to exist, and the property would belong, unencumbered, to the record title owner. See *Smith* v. *Muellner*, supra, 283 Conn.

527. In the present case, however, the plaintiffs are not the record title owners of the land encumbered by the rights-of-way. In addition, the defendant is not the owner of a dominant estate and, instead, undisputedly owns the rights-of-way in fee simple.

---